IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

GERRY MALLORY                                                                    PLAINTIFF

VERSUS                                                        CASE No. 2:25-CV-10-KS-BWR

CITY OF HATTIESBURG,
INTELLISAFE, INC., ANNA RUSH,
STEVEN ADAMSON, ELIZABETH PORTER,
CHIEF HARDY SIMS, JOHN DOES 1-10 and
ACME COMPANIES 1-10                                                              DEFENDANTS

---

**MEMORANDUM BRIEF IN SUPPORT OF
DEFENDANTS' F.R.C.P. 12(b)(6) MOTION TO DISMISS**

---

Defendants, City of Hattiesburg, Anna Rush, Steven Adamson, Elizabeth Porter, and

Chief Hardy Sims, file this Memorandum in Support of their F.R.C.P. 12(b)(6) Motion to

Dismiss and state:

**FACTS**

Plaintiff, Gerry Mallory ("Mallory"), received a Uniform Traffic Ticket in the mail for

speeding in a school zone by a Hattiesburg Police Department officer on or about August 13,

2024. [Doc. 1-4].

The speeding violation was captured by a Hattiesburg police officer using Intellisafe's

speed detection equipment, which uses LiDAR (Light Detection and Ranging) technology to

determine the speed of a vehicle and an integrated camera to record the license plate and video of

the vehicle as it passes through the field of view.

The entire system is manually operated by an officer.  It is not automated. Before issuing

a citation, a police officer will either be in his car or standing outside his car viewing traffic

passing his location. If the officer suspects that the oncoming vehicle is speeding, he points the

LiDAR gun at the vehicle and manually engages the radar. After engaging the radar, if the officer notes that the vehicle is speeding, he then engages the integrated video recorder, which records the vehicle, the driver (weather conditions permitting), and the rear of the vehicle. The officer later reviews the recorded violation at the police station and uses discretion in determining whether a citation should be issued. If the officer determines that a citation is warranted, the citation is then issued. See Doc. 1-4.

Mallory received such a citation. The citation informed Mallory that he might "appear before the Court (Justice/Municipal) to answer the charge on the 23 day of Sep. 2024 at 1:00 at the Court's Physical Address 701 James Street, Hattiesburg, MS 39401." *Id.* The citation provided Mallory with three options to address the citation, which included the option to "Contest this Citation by visiting www.CourtPayOnline.com or calling (855) 910-1558." *Id.* The footnote also informed Mallory that "you have a right to a trial if you so desire." *Id.*

Mallory filed the subject lawsuit seeking to challenge the citation, claiming that it was in violation of his constitutional due process and equal protection rights. Plaintiff further seeks an injunction against similar citations.

Despite being clearly and unequivocally informed that he could challenge the citation, including by a trial, Mallory declined to utilize this process.

The Complaint states "Mallory logged into IntelliSafe's online payment portal and paid the $230.00 fine on the "due date" (September 15, 2024)." Docs. 1 at ¶ 51; 1-6.

## LAW and ARGUMENT

### I.    Plaintiff lacks standing.

This Court should not consider the merits of Plaintiff's claims under Rule 12(b)(6) until it is satisfied he has standing to assert those claims. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Federal courts do not have jurisdiction over cases in which a plaintiff lacks standing. *Lutostanski v. Brown*, 88 F.4th 582, 587 (5th Cir. 2023)("a lack of standing is a lack of subject matter jurisdiction.").

To establish standing under Article III of the Constitution, Plaintiffs must show: (1) "an injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). At issue in this case is whether Mallory can satisfy the first two elements. These Defendants assert that Mallory fails in this regard because he has not availed himself of the procedure to contest the citation,—thus, he cannot claim the procedure caused a cognizable injury.  Mallory cannot satisfy the elements to show that he has Article III standing because he chose to pay the citation rather than challenge the citation with the procedure provided. Furthermore, as there is no longer any case or controversy, Plaintiff's claims are moot.

The Court in *Stubbs v. City of Center Point, Ala*, 988 F.Supp.2d 1270 (N.D. AL 2013) dismissed for lack of standing a case where the plaintiffs in a class action suit failed to take advantage of the process established for contesting automated traffic citations, opting instead to pay the tickets.  The Alabama District Court found no standing because the plaintiffs failed to avail themselves of the process and incurred no injury.

In this case, while payment of the fine could be considered an injury, Ms. Stubbs injury is not causally connected to the conduct of which she complains because she paid her fine without taking advantage of the process provided by the City to challenge it. Even if that process were insufficient to satisfy constitutional standards, it did not cause Ms. Stubbs to voluntarily pay her fine; no traceable connection exists. Furthermore, were the court to find the process insufficient, Ms. Stubbs would receive no redress for having paid the fine. While the court has not found any Eleventh Circuit precedent specifically dealing with the standing of a plaintiff to challenge the due process of already paid fines, various other courts have made similar findings, supporting the court's reasoning here. *See Herrada v. City of Detroit,* 275 F.3d 553, 558 (6th Cir.2001) (finding that the plaintiff "lacks standing to argue that hearings are not held despite requests by vehicle owners, because she elected to pay the fine rather than request a hearing"); *Mills v. City of Springfield, Mo.,* No. 2:10–cv–04036–NKL, 2010 WL 3526208, at *6 (W.D.Mo. Sept. 3, 2010) ("the Court need not rule upon the constitutionality of the City of Springfield's procedures because Plaintiffs do not have standing to challenge the procedures they declined to use"); *Clark v. Humane Soc. of Carroll County, Inc.,* No. WMN–11–108, 2011 WL 2791041, at *6 (D.Md. July 13, 2011), *aff'd,* 468 Fed.Appx. 342 (4th Cir.2012) ("courts have consistently held that, where an individual elects to pay a civil fine and thus avoid the criminal procedures provided to contest the alleged violation, that individual lacks standing to challenge the procedures they declined to use").

Alternatively, even if Ms. Stubbs had standing to pursue this action, she has failed to state a claim for a constitutional violation under § 1983. <u>The Supreme Court has held that a "constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.</u>" *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (finding that the patient in a state mental health facility had sufficiently stated a § 1983 claim, notwithstanding availability of post-deprivation tort remedies). Ms. Stubbs may have adequately alleged a deprivation—the payment of her fine—but does not allege that the City failed to provide due process because she admits that she never sought to challenge the traffic citation. As such, Defendants motion to dismiss is due to be GRANTED as to Ms. Stubbs's claim under Count II.

*Stubbs v. City of Ctr. Point, Ala.*, 988 F. Supp. 2d 1270, 1277–78 (N.D. Ala. 2013). The Court in

*Stubbs* found that the voluntary payment negated standing despite the plaintiff's claim in the

complaint of being misled and intimidated into paying the fine. *Id.* at 1273-74.

    The Sixth Circuit has held that that the plaintiff lacks standing to argue that her

constitutional rights were violated "because she elected to pay the fine rather than request a hearing." *Herrada v. City of Detroit*, 275 F.3d 553, 558 (6th Cir. 2001). The Fourth Circuit affirmed a District Court's opinion, holding "courts have consistently held that, where an individual elects to pay a civil fine and thus avoid the criminal procedures provided to contest the alleged violation, that individual lacks standing to challenge the procedures they declined to use." *Clark v. Humane Soc. of Carroll Cnty., Inc.*, 2011 WL 2791041 (D. Md. July 13, 2011), *aff'd*, 468 F. App'x 342 (4th Cir. 2012).

By paying the ticket, Mallory has no individualized interest in the outcome of this case, and his standing is no different than any member of the community seeking injunctive relief.

> After receiving notice from the city of his red-light violation, Garcia paid the requisite civil fine. He has not pleaded that he is subject to any outstanding violation notices that would cause him imminent harm. He has not argued he plans to violate red-light laws in the future. And for standing purposes we "assume that [plaintiffs] will conduct their activities within the law," barring some stated intent otherwise. *O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (holding that the threat of a new prosecution was not sufficiently imminent to satisfy jurisdictional requirements of federal courts); *see also Williams v. Lara*, 52 S.W.3d 171, 184–85 (Tex. 2001) (holding that the chance of people being charged with a crime in the future is too speculative to afford standing to challenge an allegedly unconstitutional law). Having resolved his only notice of violation by paying a civil fine, Garcia has no concrete or particularized stake in the validity or future application of the ordinance, the statutes that enable it, or a declaration that city officials acted ultra vires in the past. "[A]ny prospective relief [a court] might grant cannot help" Garcia because he "no longer face[s] the [purportedly] unconstitutional conduct about which [he] complain[s]." *Williams*, 52 S.W.3d at 184 (dismissing claims for injunctive and declaratory relief for lack of standing); *see also City of Dallas v. Albert*, 354 S.W.3d 368, 378–79 (Tex. 2011) (stating that ultra vires claims work for "only prospective, not retrospective, relief"). And because Garcia alleges only a past injury in the form of having already paid the civil penalty, and not a "continuing violation or the likelihood of a future [injury],

injunctive relief will not redress [his] injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

Garcia may earnestly believe that red-light cameras are both unconstitutional and bad public policy. But, having paid his fine without arguing he will potentially break the law in the future, he has no particularized interest in the issue distinguishable from a member of the public at large. *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large."); *see also Hunt v. Bass*, 664 S.W.2d 323, 324 ("Standing consists of some interest peculiar to the person individually and not as a member of the general public."). The only individualized injury Garcia can potentially claim is the money he paid to resolve his civil fine imposed under an allegedly unconstitutional ordinance and statutory scheme. But declaratory and injunctive relief on the constitutionality of red-light cameras would not *208 allow him to recoup his money; he would still be required to bring a separate claim for retrospective relief, which he has done and which we address separately. As to his claims for prospective relief, Garcia stands in the same shoes as any other citizen who might potentially be fined for running a red light. With no personal stake in the future application of the ordinance or relevant state statutes, Garcia lacks the particularized interest for standing that prospective relief requires.

*Garcia v. City of Willis*, 593 S.W.3d 201, 207–08 (Tex. 2019).

Here, like the motorist in *Stubbs*, Mallory paid the citation without utilizing any of the procedures cited in the Complaint to challenge the citation. In *Stubbs*, the Court held that while payment of the fine *could* be considered an injury, said injury <u>was not</u> causally connected to the conduct of which she complained because she paid the fine without taking advantage of the process provided to challenge it and dismissed her claims for lack of standing. Similar to the Plaintiff in *Herrada* and *Garcia*, who were found to lack standing, the Plaintiff here declined to request a hearing and instead paid the fine. Accordingly, Mallory lacks standing under Article III for failing to utilize the procedures he complains about, and his Complaint must be dismissed.

6

In addition, Plaintiff's Complaint in this case amounts to a complaint of the process itself, which is not a viable constitutional claim and does not amount to standing. An abstract allegation of inadequate process is not a legally cognizable Article III injury. See *Olim v. Wakinekona*, 461 U.S. 238, 250, (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); see also *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000) ("There is no abstract federal constitutional right to process for process's sake.") and *United States v. Hays*, 515 U.S. 737, 743 (1995)("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient for standing to invoke the federal judicial power.").

II.   **The claims against Hattiesburg's prosecutors are barred by absolute immunity and qualified immunity.**

Mallory has attempted to plead claims against all three of City of Hattiesburg's prosecutors, Steven Adamson, Anna Rush, and Elizabeth Porter. The facts alleged against these prosecutors relate to only potential future performances in their official capacities as prosecutors and their official actions as prosecutors.

Prosecutors performing an advocate's role are officers of the court entitled to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273(1993); *Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976) (under 42 U.S.C. § 1983 prosecutors are absolutely immune for acts "within the scope of their duties"); *Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021) ("Prosecutors are shielded by absolute immunity for activities 'intimately associated with the judicial phase of the criminal process,' including 'initiating a prosecution and [ ] presenting the State's case' ") (quoting *Imbler v. Pachtman*, 424 U.S. at 430-31).

Alternatively, Plaintiff's claims are barred by qualified immunity.  Qualified Immunity protects public officials from individual liability to the extent their conduct "does not violate clearly established or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  As the Fifth Circuit Court of Appeals has noted, " '[t]he qualified immunity defense gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.' " *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).  Plaintiff has failed to plead facts demonstrating the violation of a clearly established constitutional right under factually similar circumstances.

As United States District Court Judge Michael Mills wrote in *Harris v. Clay County, Mississippi*, "it is well settled that prosecutors may raise a qualified immunity defense even in cases where absolute prosecutorial immunity is found to be inapplicable, and it can scarcely be doubted that qualified immunity is, in its own right, a quite robust immunity doctrine." *Harris v. Clay County, Mississippi*, No. 1:18-CV-167-MPM-RP, 2021 WL 2004111, at *8 (N.D. Miss. May 19, 2021), aff'd in part, appeal dismissed in part, 40 F.4th 266 (5th Cir. 2022), opinion withdrawn and superseded on reh'g, No. 21-60456, 2022 WL 3646129 (5th Cir. Aug. 24, 2022), and aff'd in part, dismissed in part, No. 21-60456, 2022 WL 3646129 (5th Cir. Aug. 24, 2022 *Turner v. Oliver*, No. 3:21-CV-289 HTW-LGI, 2023 WL 2784882, at *5 (S.D. Miss. Mar. 10, 2023).

## III.    <u>The claims against Chief Hardy Sims are barred by qualified immunity.</u>

Hardy Sims is the chief of the City of Hattiesburg's police department.  A word search of the Complaint reveals that he is not mentioned in the "Factual Averments" section of the Complaint (paragraphs 35 through 89).  While he is mentioned by name in paragraph 129 of Count VI, it only states that he would incur no burden as a result of declaratory or injunctive

relief.  Accordingly, the Complaint does not state a claim against Chief Hardy Sims sufficient to overcome qualified immunity.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' The privilege is 'an immunity from suit rather than a mere defense to liability and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " *Saucier v. Katz,* 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004).  In ruling upon an assertion of qualified immunity, the court must first consider the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201. If not, "the officer is entitled to qualified immunity, and we need not consider whether the asserted right was 'clearly established.' " *Chavez v. Martinez,* 538 U.S. 760, 766 (2003). If so, then the court is to "examine the objective reasonableness of the official's conduct under the circumstances, 'in light of clearly established law and the information the ... officers possessed.' " *Gutierrez v. City of San Antonio,* 139 F.3d 441, 445 (5th Cir. 1998).

As set forth above, there are no factual averments stating how Chief Sims' conduct violated a constitutional right.  At most, he is alleged to have been the chief of police during a period of time in which City of Hattiesburg entered into a contract with Intellisafe for the usage of a technologically assisted ticketing system. Doc. 1 at ¶ 3.  Mallory has not pled and cannot show how such actions violate a clearly established constitutional right, entitling Chief Sims to dismissal.

**IV.**    **The Complaint fails to state a claim for equal protection or due process.**

Numerous other courts have addressed similar factual circumstances and claims to those attempted to be stated in the Complaint and have found that they do not violate due process or equal protection rights under the U.S. Constitution.

The Supreme Court has outlined the framework for distinguishing between civil and criminal penalties in *Hudson v. United States* 522 U.S. 93, 99–100.  This Court must first evaluate whether the legislature enacting the law intended to impose a criminal or civil sanction. *Id.* at 99.  The Court may consider three prongs in determining legislative intent: the purpose or objective of the legislation, the manner of its codification, and the enforcement procedures it establishes.  *Smith v. Doe,* 538 U.S. 84, 93–94.  If the legislature intended to create a civil penalty, the *Hudson* test then asks whether the purpose or effect of the law was nonetheless "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson,* 522 U.S. at 99 (citation and internal quotation marks omitted).

The Supreme Court has identified several "useful guideposts" for that inquiry:

1) whether the sanction involves an affirmative disability or restraint;

2) whether it has historically been regarded as a punishment;

3) whether it comes into play only on a finding of scienter;

4) whether its operation will promote the traditional aims of punishment— retribution and deterrence;

5) whether the behavior to which it applies is already a crime;

6) whether an alternative purpose to which it may rationally be connected is assignable for it; and

7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99–100 (citing *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). These factors are neither dispositive nor exhaustive. *Smith,* 538 U.S. at 97. The Supreme Court has instructed that they "must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent." *Hudson,* 522 U.S. at 100 (citation and internal quotation marks omitted).

1)      As to the first factor, there is no express legislative intent labeling the subject ordinances or their enforcement as civil or criminal, resulting in this factor being neutral.

2)      As to the second factor, minor fines for traffic citations have not been historically classified as criminal. *Balaban v. City of Cleveland*, No. 1:07-CV-1366, 2010 WL 481283, at *4 (N.D. Ohio Feb. 5, 2010).

3)      Concerning the third factor, Hattiesburg's ordinances, set for the below, do not include an element of scienter.

> Sec. 25-11. Speed limits. A. It shall be unlawful for any person to operate a motor vehicle on any of the public streets, avenues or alleys within the city at a greater rate of speed than is reasonable and proper, having due regard to the traffic and use of such streets, avenues and alleys; or so to endanger the life or limb of any person or the safety of any property. B. It shall be unlawful for any person to operate or drive a motor vehicle on any of the public streets, avenues or alleys within the business section of the city at a greater rate of speed than twenty (20) miles per hour. C. It shall be unlawful for any person to operate or drive a motor vehicle on any of the public streets, highways, roads, avenues or alleys anywhere within the corporate limits of the City of Hattiesburg at a greater rate of speed than that posted, and where no speed limit is posted, then it shall be unlawful for any person to operate or drive a motor vehicle on any of the public streets, highways, roads, avenues or alleys, within the corporate limits of the City of Hattiesburg at a greater rate of speed than thirty (30) miles per hour. (Ord. 2721, sec.2, May 2, 2000,Ord. 1831, sec. 1, 11-16-74; Ord. 1058, secs. 1, 2 & 4, 12-12-46)[1]

---

[1] Available https://www.hattiesburgms.com/wp-content/uploads/chapter.25traffic.pdf.

The absence of scienter indicates the ordinance is civil. *Balaban v. City of Cleveland*, No. 1:07-CV-1366, 2010 WL 481283, at *4 (N.D. Ohio Feb. 5, 2010).

       4)      As to the fourth factor, Defendants concede the goal of a fine for speeding in a school zone is deterrence.

       5)      As to the fifth factor, Defendants concede speeding may be a crime in some circumstances.

       6)      As to the sixth factor, City of Hattiesburg is only using the IntelliSafe ticketing system to enforce speeding within school zones, an area of greater danger than the average streets of the city. As with other cases, ordinances and enforcement such as this have been found to be rationally related to government interests. See *Balaban v. City of Cleveland*, No. 1:07-CV-1366, 2010 WL 481283, at *5 (N.D. Ohio Feb. 5, 2010), stating:

> "Public safety is certainly a legitimate nonpunitive purpose… The Ordinance relates to safety by penalizing, and thus seeking to deter, those who speed and run red lights, with higher monetary penalties assigned to conduct that appears to carry a higher risk to the public safety: speeding in school and construction zones and exceeding the speed limit by 25 miles per hour or more…The Ordinance need not be perfectly tailored to these nonpunitive aims; it simply must be rationally related so as to avoid the appearance that the nonpunitive purpose is 'a sham or mere pretext.' The City's Ordinance easily satisfies this inquiry. Because it is rationally related to the legitimate nonpunitive purpose of public safety, this factor weighs in favor of labeling the Ordinance as civil."

       7)      The potential fine in this case is only $230 and is not excessive in view the amounts that have been previously found not excessive. See *Balaban* at *5 (fine of $200 fourteen years ago not excessive). Additionally, like *Balaban*, a diversion program is offered whereby no points are assessed against violators, so drivers' insurance and insurance records are not affected, further negating the criminal nature of an offense. *Id.*

With the first factor being neutral and factors two, three, six and seven being strongly in favor of speeding enforcement under this system being civil, Plaintiff does not have heightened due process protections.

In *Bevis v. City of New Orleans*, the plaintiff sought to challenge the City of New Orleans "Automated Traffic Enforcement Safety System" which permits the city to use automated cameras to detect speeding violations and cars entering intersections against red lights. Plaintiff alleged that the system violated plaintiff's due process rights, *inter alia*. The Fifth Circuit disagreed:

> We next consider Plaintiffs' contention that the Ordinance does not supply constitutionally adequate process. The constitutional adequacy of the Ordinance's procedures is assessed by balancing the private and governmental interests concerned. *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). We consider, first, "the private interest that will be affected by the official action." *Id.* at 335, 96 S.Ct. at 903. In this case, the maximum fine is the relatively minor amount of $380, or $455 if the payment is overdue. Next, we consider "the risk of an erroneous deprivation" under the procedures provided. *Id.* Plaintiffs do not challenge any specific aspect of the procedures governing the administrative hearing the Ordinance provides. They contend that the hearing officer is not neutral, but a presiding official's being an employee of the municipal executive does not alone offend due process.[2] Plaintiffs also argue that requiring a driver to file a civil action in order to challenge the outcome of the initial hearing deprives them of due process because of the expense of initiating the civil action. However, unless a fundamental interest is at stake, the due process clause allows states to restrict access to judicial review of civil administrative proceedings. *See M.L.B. v. S.L.J.,* 519 U.S. 102, 113, 117 S.Ct. 555, 562, 136 L.Ed.2d 473 (1996). No fundamental interest is involved here.[3]
>
> Finally, the private interests and risk of error are balanced against "the Government's interest, including the function involved and the fiscal and administrative burdens that ... additional or substitute procedural requirement [s] would entail." *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. The City's interest is to reduce the risk of road accidents. Though only a fraction of traffic violations cause an accident, the costs of even a low-speed collision can be severe, particularly if a pedestrian is struck. **The features of the Ordinance's adjudicatory scheme raised in this appeal fall comfortably within the "great leeway" given to governments in**

**"protect[ing] public health and safety."**[4] *See Mackey v. Montrym,* 443 U.S. 1, 17, 99 S.Ct. 2612, 2620, 61 L.Ed.2d 321 (1979).

*Bevis v. City of New Orleans*, 686 F.3d 277, 280–81 (5th Cir. 2012).  The same policy concerns exist in this case, except to a greater degree.  In this case, the subject camera system is utilized solely in school zones, where there is higher pedestrian traffic and a greater likelihood of a tragic accident.  Moreover, private interests are protected to a greater degree here, as an officer is physically present at the scene and personally witnesses the traffic infraction being committed.

In *Balaban v. City of Cleveland*, No. 1:07-CV-1366, 2010 WL 481283, at *1 (N.D. Ohio Feb. 5, 2010), the plaintiff sought to challenge the city's automated traffic enforcement camera system, whereby cameras photograph cars exceeding the speed limit or running a red light. Similar to *Bevis*, the court found that the three *Matthews* factors favored no due process violation.  As with *Babalan,* the camera system is manned by an officer and operated manually, further reducing the risk of an erroneous deprivation of an interest.  Just as with *Babalan,* City of Hattiesburg has a strong interest in traffic safety in its school zones.  The Court should find similarly in this case that Hattiesburg's system does not violate due process because Hattiesburg has a strong substantial interest in public safety and administrative efficiency.

In a recent decision, Mississippi Federal District Judge Ozerden found that similar allegations failed to state a claim for procedural due process. Judge Ozerden, in examining a similar automated system, found that the notice and opportunity that were given under the same system that is at issue here was sufficient to satisfy procedural due process requirements.  *Divine, et al. v. Securix, LLC*. 1:23-cv-196 HSO-BWR (S.D. Miss.) Doc. 20 at 22-23.  Like the Plaintiffs in *Divine*, Blackledge admits to receiving notice of a court setting, giving him an option to be heard and due process.

14

Numerous courts have also found that similar cases fail as a matter of law. See e.g., *Mestayer v. City of New Orleans*, No. CV 19-14432, 2020 WL 3429826 (E.D. La. June 23, 2020)(dismissing case with prejudice, finding no procedural or substantive due process violations associated with camera ticketing system). *Mestayer* cited and relied upon *Mendenhall v. City of Akron*, 374 Fed. Appx. 598 (6th Cir. 2010)(unpublished), where speeding ordinances based on photographic evidence that cars were speeding, without evidence that owners were behind wheel at time, constituted a civil violation and was found to be within the bounds of constitution authority. See also *Leder v. Am. Traffic Sols., Inc.*, 630 Fed.Appx. 61, 62–63 (2d Cir. 2015) (red-light camera program did not violate substantive due process).

Courts have also found no equal protection violation, as camera assisted ticketing systems utilized for enforcement of traffic laws have a rational relationship to government interest. See e.g., *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 996 (8th Cir. 2016), stating:

> The ordinance passes rational basis. The City could rationally conclude that the ATE system would reduce the number of people violating traffic laws. *See Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (A "system that simultaneously raises money and improves compliance with traffic laws has much to recommend and it cannot be called unconstitutionally whimsical"); *Hughes*, 112 F.Supp.3d at 842–43 (rejecting an equal-protection challenge to distinctions based on licence-plate location and types of vehicles in the database). There is no Equal Protection Clause violation here.

See also *Hanna v. LeBlanc*, No. CV 15-2851, 2017 WL 2198345, at *7 (W.D. La. Mar. 8, 2017), *report and recommendation adopted,* No. CV 15-2851, 2017 WL 2198188 (W.D. La. May 18, 2017), *aff'd,* 716 Fed. Appx. 265 (5th Cir. 2017)(unpublished)(no violation of equal protection); *Mills v. City of Springfield, Mo.*, No. 2:10-CV-04036-NKL, 2010 WL 3526208, at *7 (W.D. Mo. Sept. 3, 2010)("It is implausible that § 106–161 could have denied Plaintiffs the equal protection

of the law, and Plaintiffs have failed to state a claim for which relief can be granted under the Equal Protection Clause of the Fourteenth Amendment.")(citing *Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 723 (M.D.N.C. 2003), *order vacated sub nom. Shavitz v. Guilford Cnty. Bd. of Educ.*, 100 Fed. Appx. 146 (4th Cir. 2004)(unpublished)("Plaintiff falls far short of surmounting the formidable presumption of validity bestowed upon the statute and ordinance by the rational basis review standard.")

Although Plaintiff makes the hollow argument that Hattiesburg's manual use of a camera system violates Miss. Code Ann. §17-25-19, this affords Mallory no claim or avenue for redress. "A state's violation of a state statute alone is not cognizable under [section] 1983 because [section] 1983 is only a remedy for violations of federal statutory and constitutional rights." *Sevin v. Par. of Jefferson,* 621 F.Supp. 2d 372, 377 (E.D. La 2009)(citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)).

Plaintiff's Complaint fails to state a claim and should be dismissed.

WHEREFORE all claims against these Defendants should be dismissed pursuant to F.R.C.P. 12(b)(6).

RESPECTFULLY SUBMITTED, this the 9th day of April, 2025.

/s/ Lane Dossett
R. LANE DOSSETT (MSB NO. 102927)
*Attorney for City of Hattiesburg, Anna Rush,*
*Steven Adamson, Elizabeth Porter, and*
*Chief Hardy Sims*

## CERTIFICATE OF SERVICE

I, undersigned counsel, do hereby certify that I have this date forwarded a true and correct copy of the above foregoing MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' F.R.C.P. 12(B)(6) MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY via United States Mail, first class, postage prepaid, facsimile and/or electronic mail under F.R.C.P. 5(b) to:

> Nicholas Sakalarios (MSB# 102062)
> Sakalarios Law PLLC
> 7 Woodstone Plaza Ste 6
> Hattiesburg, Mississippi 39402
> 601.261.4212
> Email: nick@skalarioslaw.com
>
> Anthony Sakalarios (MSB# 6415)
> Sakalarios Blackwell & Schock
> 1817 Hardy Street
> Hattiesburg, Mississippi 39401
> 601.544.3343
> Email: asakalarios@sbslawfirm.net
>
> A.  Regnal Blackledge (MSB# 10404)
> 601 South Second Street
> Collins, MS 39428
> 601-765-2828
> Email: blackledgelaw@att.net

This the 9th day of April, 2025.

> /s/ Lane Dossett
> _____
> R. LANE DOSSETT (MSB NO. 102927)
> *Attorney for City of Hattiesburg, Anna Rush,*
> *Steven Adamson, Elizabeth Porter, and*
> *Chief Hardy Sims*

17