**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

| | |
|---|---|
| GERRY MALLORY, Individually and on Behalf of all Others Similarly Situated, | |
| *Plaintiff,* | |
| v. | **Case No. 2:25-cv-10-KS-BWR** |
| | **ORAL ARGUMENT REQUESTED** |
| CITY OF HATTIESBURG, INTELLISAFE, INC., ANNA RUSH, STEVEN ADAMSON, ELIZABETH PORTER, CHIEF HARDY SIMS, JOHN DOES 1-10, and ACME COMPANIES 1-10 | |
| *Defendants.* | |

**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO
DEFENDANTS' F.R.C.P. 12(b)(6) MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO STAY**

COMES NOW, the Plaintiff, by and through undersigned counsel of record and files this his *Memorandum Brief in Support of Plaintiff's Response to Defendants' F.R.C.P. 12(b)(6) Motion to Dismiss or, In the Alternative, Motion to Stay*, and would show unto the Court the following, to-wit:

**INTRODUCTION**

Before addressing the arguments contained in the Defendant's *F.R.C.P. 12(b)(6) Motion to Dismiss or, In the Alternative, Motion to Stay* (hereinafter the "*Motion*") and the accompanying *Memorandum Brief in Support of Defendants' F.R.C.P. 12(b)(6) Motion to Dismiss or, In the Alternative, Motion to Stay* (hereinafter the "*Memo*"), the Court should be aware of certain misstatements contained in the Defendant's *Memo* which can only be meant to the deceive the Court as to the true facts and circumstances surrounding this case. Importantly, without the benefit

of these falsehoods, the Defendant's arguments quickly begin to crumble as they are neither supported by the facts, nor the law.  Prior to addressing the merits of the Defendant's arguments (or lack thereof), the Plaintiff would point out certain misstatements of fact which were set forth in the Defendant's *Memo*, including but not limited to:

- The Defendant misrepresents to the Court that, prior to issuing a Citation pursuant to the illegal, unconstitutional and conspiratorial scheme, "[t]he officer later reviews the recorded violations at the police station and uses discretion in determining whether a citation should be issued"[1] when, in reality, the Citations are simply "rubber-stamped" by the officers and, based upon information and belief, the officer does not even review the "recorded violations" until ***months*** later when, and if, a Purported Violator[2] actually makes it to a hearing before the Hattiesburg Municipal Court.  In other words, each and every Citation issued pursuant to the illegal, unconstitutional and fraudulent scheme is sent to at least one Purported Violator, regardless of whether the officer captured any evidence which would show who was actually driving at the time of the infraction.  The truth is that <u>**all**</u> Citations issued by Hattiesburg Police officers pursuant to the scheme are forwarded to Intellisafe for processing, and each and every Citation issued by a Hattiesburg Police Officer pursuant to the scheme is sent by Intellisafe to at least one Purported Violator in hopes that the Purported Violator(s) would not challenge the scheme, would take the path of least resistance, rely on the falsehoods offered by Intellisafe, and, just pay the fine.  The lack of officer "discretion" in issuing the Citations is obvious when considering that, (1) the Defendant Intellisafe is sending Citations to Purported Violators who are <u>**deceased**</u>.[3] (2) the Defendant Intellisafe is sending Citations to more than one Purported Violator for the same instance of speeding (meaning that more than one Purported Violator would have to be driving at the time of the infraction which is physically impossible)[4], and, (3) when the Defendant Intellisafe is sending Citations to Purported Violators ***who weren't even driving at the time of the infraction***, and, when the Purported Violators challenge the scheme at an actual Hattiesburg Municipal Court hearing, the Municipal Court Prosecutor is virtually "wholesale" dismissing the Citations ***because he cannot identify who was driving***.[5]

---

[1] See Defendant's *Memo* [12] at p. 2, ¶ 4.

[2] A "Purported Violator" as used herein means anyone who receives (or received) a Citation pursuant to the illegal, conspiratorial and unconstitutional scheme orchestrated by the Defendants.

[3] *See* Hood Affidavit evincing the fact that the Defendant is sending Citations to Purported Violators who are deceased.  A true and correct copy of this Affidavit is attached hereto and labeled Exhibit "A."

[4] *See* Cowart Affidavit evincing the fact that Purported Violator "Barry Cowart," as well as his daughter, "Aiana Cowart" received a Citation for the same instance of speeding, meaning they were both cited for ***exactly the same*** violation.  A true and correct copy of this Affidavit is attached hereto and labeled Exhibit "B".

[5] See Exhibit "A."

- The Defendant misrepresents to the Court that the "[t]he vehicle owner is essentially given bifurcated options between ***civil and criminal penalties***"[6] when speeding violations in the State of Mississippi are undoubtedly ***criminal misdemeanors***.[7] One must only look to the Mississippi statutes, as well as the City of Hattiesburg Ordinances and, in particular, the very ordinances which the Defendants are now attempting to unconstitutionally enforce, to determine that speeding violations in Mississippi are criminal misdemeanors and **NOT** civil violations. Furthermore, the Defendants have no power or authority, whatsoever, to transform criminal misdemeanors into civil penalties so to accomplish their illegal, unconstitutional and conspiratorial scheme.

- The Defendant misrepresents that "the Intellisafe documents attached to the Complaint as 'Exhibit B' were not sent to Plaintiff Mallory, as they are outdated and were revised soon after the program was implemented in Mississippi, and well before Plaintiff Mallory was cited."[8] However, "Exhibit B" exemplifies a true and correct copy of the "FAQ Document" that Defendant Intellisafe "provided" to Plaintiff Mallory when it directed the Plaintiff to the FAQ online if he had any questions. While it is true that the Defendant Intellisafe did not "send" Exhibit B to Plaintiff Mallory, per se (Plaintiff Mallory has never alleged such), Intellisafe nevertheless directed Plaintiff Mallory to the misleading, false, and/or fraudulent statements contained in Exhibit B in an effort to further coerce him into paying the illegal fine of $230.00. This doesn't even touch on the fact that Intellisafe ***has admitted*** in its *Motion* and accompanying *Memo* that it is proceeding with the prosecution, or "quasi-prosecution," of **unsworn and unfiled** Citations which is in direct violation of Mississippi Law.[9]

- The Defendant misrepresents that "Intellisafe employees are limited in what they are permitted to say to motorists who call in, and they are not trained to refer to anything as an arraignment" when Plaintiff has direct evidence of multiple statements made by Defendant Intellisafe, including but not limited to, an email from the Defendant's "Help Desk" wherein Intellisafe informed Purported Violator, Ms. Crystal Dorn, that "[y]our citation already has a Court Date of 11/25/24 **for an arraignment, which will be the opportunity for you to choose from the previous options by speaking with a company**

---

[6] See Defendant's *Memo* [12] at p. 3, ¶ 7.

[7] See Miss. Code Ann. § 63-9-11(1) which provides that "it is a ***misdemeanor*** or any person to violate any of the provisions of **Chapter 3**, 5 or 7 of this title, unless such violation is by such chapters or other law of this state declared to be a felony. (emphasis added) (**Chapter 3** of Title 63 is "Traffic Regulations and Rules of the Road.") While multiple other Mississippi statutes support the fact that speeding is a criminal misdemeanor, the inclusion of those voluminous statutes and ordinances is not necessary as it is obvious that speeding is a ***criminal*** violation and not considered a ***civil*** infraction.

[8] See *Memorandum Brief in Support of Defendants' F.R.C.P. 12 (b)(6) Motion to Dismiss or, In the Alternative, Motion to Stay* at p. 3, ¶ 8 (emphs. added).

[9] *Id.* at p. 2, ¶ 5; *See also* Miss. Code Ann. § 63-9-21(3)(c).

**representative**."[10]  Obviously, not only is the Defendant representing that it is conducting "arraignments," its employees are undoubtedly trained to inform Purported Violators that Intellisafe will be conducting an "arraignment" on the "court date" listed on the Citation.[11] And before the Defendant Intellisafe tries to state this too is an anomaly, other Purported Violators who did appear before the Defendant's representative have been told the same thing.[12]

Make no mistake, this case involves an ongoing fraudulent, conspiratorial and unconstitutional course of conduct (or scheme), enforced by an unconstitutional policy enacted and promulgated by the City of Hattiesburg, which begins with a false affidavit/Citation that is issued and/or executed by a Hattiesburg police officer using specialized camera equipment provided by the Defendant Intellisafe.  Once a Hattiesburg police officer issues a Citation, the officer forwards the Citation to the Defendant Intellisafe for processing.

Importantly, speeding is considered a **criminal misdemeanor** in Mississippi pursuant to Miss. Code Ann. § 63-9-11(1).  Nevertheless, once Hattiesburg police officer executes a false affidavit (or Citation) by using Intellisafe's automated camera equipment, he/she forwards the Citation to Intellisafe for processing.  Intellisafe then mails the Citation to Purported Violators and attempts to defraud them by making misstatements of both fact and law which are designed to coerce and/or extort a monetary payment from the Purported Violators in the form of a $230.00 "fine."  Indeed, as detailed in the *Complaint* and as will be shown below, Intellisafe uses fraudulent, deceptive and outright false statements to induce the Purported Violators to participate in a sham

---

[10] See Email Correspondence, attached to the Affidavit of Crystal Dorn, by and between Purported Violator, Ms. Crystal Dorn, and the Defendant's "Help Desk" wherein the Defendant clearly represents that it (rather than the Municipal Court) will be conducting an "arraignment" on the court date listed on Ms. Dorn's Citation.  This is exactly what Plaintiff described in the Complaint when alleging that the Defendant Intellisafe is misrepresenting that it has the power or authority to conduct "arraignments."

[11] *Id.*

[12] See Exhibit "B," Affidavit of Barry Cowart wherein Mr. Cowart explains that the Defendant's representative referred to their meeting as an arraignment.

"diversion program" which, in reality, is nothing more than a fraudulent, unconstitutional and conspiratorial scheme designed to extort money from law-abiding citizens.

In its *Memo* the Defendant Intellisafe has asserted that, pursuant to Rule 12(b)(6), Plaintiff's claims should be dismissed for the following reasons:

I.    The speeding enforcement system at issue is permitted under Mississippi law.
II.   Miss. Code Ann. § 17-25-19 does not apply because Intellisafe's traffic control system is not automated.
III.  Plaintiff lacks standing under Article III and his claims are moot.
IV.   Plaintiff fails to state a claim for relief for violation of due process.
V.    Plaintiff fails to adequately plead violations of his rights under the Fifth, Sixth, and Fourteenth Amendments.
VI.   Plaintiff fails to adequately plead an abuse of process claim.
VII.  Plaintiff fails to adequately plead a claim for fraud against Intellisafe.
VIII. Plaintiff's claims for punitive damages is untenable.
IX.   Plaintiff fails to adequately plead a plausible claim of civil conspiracy.

However, as outlined above, the Defendant's *Memo* contains several mischaracterizations and falsehoods that are detrimental to the relief sought in the *Motion*. Additionally, the Defendant has conceded many of Plaintiff's arguments (albeit inadvertently at times) which is likewise detrimental to the Defendant's *Motion* in that these admissions **actually support** the Plaintiff's claims and averments. While there are many deficiencies and outright misstatements of fact and law in the *Memo*, perhaps the most-glaring is the Defendant's statement that "**[t]he Chrysler Pacifica owned by Plaintiff…was recorded speeding in a school zone**…" which confirms Plaintiff's allegations that the Hattiesburg Police Officer who issued the citation to Plaintiff Mallory only knew that his **vehicle** was speeding in a school zone, but he did not know who was driving at the time. Thus, the Defendant admits that **Plaintiff's vehicle (and not Plaintiff)** was found to be speeding in a school zone. It goes without saying that Plaintiff's vehicle cannot be guilty of the criminal misdemeanor of speeding.

Despite the multiple mischaracterizations of fact and law contained in the *Motion* and

*Memo*, Plaintiff will address the Defendant's arguments, as follows:

## STANDARD OF REVIEW

Longstanding federal jurisprudence makes clear that "[m]otions to dismiss pursuant to Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Jones v. Tyson Foods Inc.*, 971 F. Supp. 2d 632, 637 (N.D. Miss. 2013) (quoting *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012)). To avoid dismissal under F.R.C.P. Rule 12(b)(6), a Plaintiff need only plead "facts to state a claim to relief that is plausible on its face, 'with facts sufficient to nudge' claims across the line from conceivable to plausible." *TrinCo Inv. Co. v. United States*, 722 F. 3d 1375, 1380 (Fed. Cir. 2013) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)).

When considering a motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept as true all the factual allegations in the complaint, and must indulge all reasonable inferences in favor of the non-movant. *Gould v. United States*, 935 F. 2d 1271, 1274 (Fed. Cir. 1991). Additionally, "only the complaint and the allegations contained therein are to be considered in reaching a decision on a defendant's rule 12(b)(6) motion to dismiss…[and] the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Kinnison v. Miss. Dept't of Wildlife, Fisheries & Parks*, 990 F. Supp. 481, 483 (S.D. Miss. 1998).

Pursuant to Fifth Circuit precedent, "the reviewing court must construe the facts in the light most favorable to the nonmoving party because motions to dismiss are viewed with disfavor and are rarely granted," and, in any event, at this nascent stage of the proceedings, a plaintiff need not

plead every single fact concerning every single element of damage or defense which may be raised to satisfy the pleading standard set forth in *Twombly* and *Iqbal*.[13]

## ARGUMENT

### I.    The speeding enforcement at issue is in violation of Mississippi law.

The Defendant's arguments in Section "I" of its *Memo* are meritless and are neither supported by the law, nor the facts.  First, the Defendant's reliance upon "Nathan's Law" for the untenable position that a Mississippi police officer only needs probable cause to issue a traffic citation for a speeding infraction is misplaced, at best.  Undeniably, the language established in Nathan's Law *only* applies in situations where a driver is witnessed impermissibly passing a school bus, *in violation of Miss. Code Ann. § 63-3-615*.   Thus, the Defendant's arguments regarding Nathan's Law and its applicability to the instant case are simply irrelevant as this matter does not involve the impermissible passing of a school bus in violation of Nathan's Law.

In support of this fallacious argument, the Defendant cites to Miss. Code Ann. § 63-3-615 (or "Nathan's Law") which is a very specific statute aimed at curbing the impermissible passing of a school bus.  Pursuant to Nathan's Law, if a person witnesses the driver of any vehicle *violating the provisions of this section and the identity of the driver of the vehicle is not otherwise apparent*, it shall be a rebuttable inference that the person in whose name the vehicle is registered committed the violation.[14]   Thus, Nathan's Law carved out an *exception* to the rule that a person suspected of a moving violation under Mississippi Law must be properly and positively identified prior to the issuance of any citation.

---

[13] *See Turner v. Pleasant*, 663 F. 3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *See also Petro-Hunt, LLC v. United States*, 90 Fed. Cl. 51, 71 (2009).

[14] *See* Miss. Code Ann. § 63-3-615 (emphs. added).

Intellisafe further misconstrues Mississippi statute with regard to whether a police office can *issue* a citation by computer or electronic means, citing Miss. Code Ann. § 63-9-21(8). That statute, and subsection thereof, does Intellisafe no good. In fact, the statute does not state that a police officer can *issue* a citation by computer or electronic means, it states "[l]aw enforcement officers and agencies may *file* traffic tickets, including tickets issued for a violation of the Mississippi Implied Consent Law and general misdemeanor affidavits, by computer or elections means…."[15]

Additionally, Intellisafe asserts the fallacious argument that "[a] Mississippi police officer only needs probable cause to issue a citation for speeding."[16] This is patently false. Instead, probable cause (or a reasonable suspicion as Defendant suggests) merely allows a Mississippi police officer *to initiate a traffic stop* to determine whether a crime is being committed and, most importantly, **who committed it**. "When an officer observes a traffic violation, he has probable cause to detain that person long enough to issue a traffic citation." *Smith v. State*, 2024 Miss. App. LEXIS 85, *7, p.14 (quoting, *Martin v. State*, 240 So. 3d 1047, 1054 (Miss. 2017)). Just because an officer may (or may not) have probable cause does not mean that the officer is justified in executing a *criminal affidavit* without knowing who committed the crime. In *Martin*, the Mississippi Supreme Court recognized a previous stated definition of probable cause as:

> a practical, nontechnical concept, based upon the conventional consideration of every day life on which reasonable prudent men, not legal technicians act. It arises when the facts and circumstances with an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed *and that a particular individual committed it*.

---

[15] Miss. Code Ann. §63-9-21(8) (emphs added).

[16] *Memo* at p. 4.

*Martin*, 240 So. 3d at 1051 (quoting, *Harrison v. State*, 800 So. 2d 1134, 1138 (Miss. 2001)) (emphs added).  Therefore, it would appear then that the Defendant either totally misunderstands the concept of probable cause, or is purposefully misstating what probable cause allows (and does not allow) a Mississippi police officer to do, apparently in an effort to justify the false affidavits and frauds which were detailed in the *Complaint*.

The Defendant further claims that "the issuance of a citation is not a finding of guilt" and "the Plaintiff simply elected to avail himself of the diversion program."  What Defendant fails to acknowledge is that Plaintiff "availed himself of the diversion program" based upon false and/or fraudulent statements made by Defendant which were intended to coerce and/or extort a monetary payment from him.  Additionally, Plaintiff has not alleged that "the issuance of a citation is a finding of guilt," but rather complains of the process by which the citations are issued and the fines are levied against purported violators such as Plaintiff.  While the simple issuance of the citation is not a finding of guilt, the levying of a fine, and potentially a late fee, coupled with the attempt to collect that fine by an arbitrary date prior to a hearing, or even the court date identified on the citation itself, is.

Finally, the Defendant claims that "the late fee is only assessed if the vehicle owner <u>declines</u> to contest the violation in court and elects to enter the diversion program <u>after</u> said program's deadline."[17]  This is a demonstrably false misrepresentation of the materials offered to Plaintiff, including the Citation itself.  What the Defendant fails to acknowledge is the "program deadline" is really the "due date" listed on the Citation.  However, the arbitrary "due date" (or "program deadline") is ***prior to*** the purported "court date" listed on the Citation (which is not a court date at all as will discussed below).  By way of example, Plaintiff's Citation contained a "due date" (or

---

[17] See *Memo* at p. 4.

"program deadline") of **September 15, 2024**, but the "court date" listed on the Citation was **September 23, 2024**, or eight (8) days *later*. Thus, pursuant to the unconstitutional, conspiratorial and fraudulent scheme, the Defendants are requiring that Purported Violators (such as Plaintiff) pay the illegal fines ***prior to*** their scheduled court date listed on the Citation(s). So, just as Plaintiff has alleged, the Defendant is rendering the Purported Violators (including Plaintiff) guilty ***prior to*** any opportunity to avail themselves of due process, much less a hearing before the Hattiesburg Municipal Court.

## II.    The scheme implemented by the Defendants is in violation of Miss. Code Ann. § 17-25-19.

Just as Plaintiff alleged in his *Complaint*, the Defendants are attempting to skirt the provisions of Miss. Code Ann. § 17-25-19 by having Hattiesburg Police Officers manually operate the "automated" camera system used to issue the citations at issue in this litigation. As Plaintiff also highlighted in his *Complaint*, the Defendants have *repeatedly* referred to the system as "automated." Moreover, the Defendant's narrow interpretation of § 17-25-19 is problematic.

For instance, the Defendant claims that "the traffic control program at issue … is entirely manual in operation." Pursuant to § 17-25-19, "the term automated recording equipment or system means a camera or optical device installed to work in conjunction with a traffic control signal or radar speed detection equipment or both and designed to record images that depict the license plate attached to the rear of a motor vehicle…." In the Defendant's words, "[t]he speeding violation was captured by a Hattiesburg police officer using Intellisafe's speed detection equipment, **which uses LiDAR (Light Detection and Ranging) technology to determine the speed of a vehicle and an integrated camera to record the license plate and video of the vehicle as it passes through the field of view**." Thus, by the Defendant's own definition of the illegal scheme, the Hattiesburg police officer uses a **camera** or optical device which works in conjunction with **radar**

10

**speed detection equipment** to capture or record **images that depict the license plate of [Plaintiff's] vehicle**. Exactly the type of traffic enforcement system that the Mississippi legislature prohibited through the adoption of § 17-25-19.

So, it would appear then that Defendant has conceded that, absent the word "installed," the illegal and unconstitutional scheme complained of herein ***would be*** in violation of § 17-25-19, but, because the Hattiesburg police officer is holding (or "operating") the camera system, such equipment is not "installed" for purposes of § 17-25-19. Yet, the word "install" as defined by Merriam-Webster's dictionary, means "to set up for service or use," or, "to establish in an indicated place, condition, or status."[18] Black's Law Dictionary defines "install" as "[t]o induct (a person) into an office or a rank" and provides the example of "the newly elected governor was soon installed in office."[19] Clearly, the definition of the word "install" is *much* broader than the Defendant has represented to the Court. Furthermore, when the Hattiesburg police officer "installs" himself (and the automated camera system) within a school zone and uses said automated equipment to issue traffic citations by capturing the license plates of passing vehicles, he/she is violating the provisions of § 17-25-19. Indeed, the officer is "set up for service or use" with his automated camera equipment and has "established [himself] in an indicated place…," i.e., within a school zone. Clearly, the Defendant's conduct is not only in violation of Plaintiff's constitutionally protected rights, it is in direct violation of the law(s) of the State of Mississippi, and specifically the provisions of § 17-25-19.

---

[18] Interestingly, the definition of "install" also includes the example "***installing herself in front of the fireplace***" which clearly demonstrates that Defendant's narrow reading of the word "install" is inapplicable here and does not accurately define that term as used in § 17-25-19. "Install." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/install. Accessed 16 Apr. 2025.

[19] Blacks Law Dictionary, 10th Ed.

What's more, the Defendant argues that "two Mississippi legislators recently attempted to amend § 17-25-19 specifically because **it does not** cover the equipment at issue here."[20]  The Defendant alleges that Senate Bill No. 2201 ("SB2201") "is instructive both as to what § 17-25-19 actually covers, and to the simply illogical argument that a statute addressing automated cameras would encompass manually operated equipment."  Though, what the Defendant fails to disclose to the Court is the real impetus for SB2201, i.e., the *very* conduct complained of herein.  Indeed, when asked about this issue, Senator Joey Fillingane (who authored SB2201) provided the following statement:

> When we have a very clear straightforward law that we passed a couple years ago to avoid this and then to have municipalities going around the spirit and letter of the law by doing an exception or loophole, *that was not cleared with the legislature at all, **and clearly violates the spirit and letter of our law***, it is really sort of aggravating, to be honest with you.[21]

Clearly, SB2201 did not seek to amend § 17-25-19 to add language to cover the complained of activity, but rather sought to clarify that § 17-25-19 *already prohibits* the Defendant's conduct.  Thus, it is evident that the Defendant's conduct complained of herein is in direct violation of § 17-25-19.

### III.    Plaintiff has standing to bring his claims on behalf of himself and on behalf of all others similarly situated.

The Defendant claims that "Plaintiff cannot satisfy the elements to show that he has Article III standing because he chosen to pay the citation rather than challenge the citation with the resources provided" and, "as there is no longer any case or controversy, Plaintiff's claims are moot."  Defendant then analyzes multiple cases in support of this claim which are inapposite to

---

[20] *Memo* at p. 6. (emphasis in original).

[21] WDAM Staff, "*Hattiesburg faces new legal challenges over school zone traffic cameras.*" WDAM: Feb. 7, 2025, https://www.wdam.com/2025/02/07/hattiesburg-faces-new-legal-challenges-over-school-zone-traffic-cameras/.

the instant matter.  To be sure, the distinguishing factor in those cases which undermines the Defendant's argument concerning standing is the fact that the ***actual frauds*** perpetrated on the Purported Violators in this case were not present in the cases cited in support of Defendant's claims.

For example, the Defendants' reliance upon the *Stubbs* decision is misguided, at best. Clearly, there are multiple and significant distinctions between *Stubbs* and this litigation.  Several important distinctions are, as follows:

1. The court in *Stubbs* recognized that Alabama Act 2011-580, established that certain violations, i.e., running a red light, running a traffic control device, or speeding within the City of Center Point, were deemed to be **civil** offenses.  *Stubbs v. city of Ctr. Point*, 988 F. Supp. 2d 1270, 1272-1273 (N.D. Ala. 2013).  Despite the Defendants' efforts in its brief to make speeding in the City of Hattiesburg a civil offense, it is, in fact, a criminal misdemeanor as defined by the Mississippi statutes.

2. The complaint in that matter alleged that the City of Center Point, Alabama did not operate a municipal court.  *Id.* at 1273.  The City of Hattiesburg does.

3. The court in *Stubbs* recognized that the Act as well as the city ordinance that established the use of automated photographic enforcement of those violations mentioned above, specifically included a provision for the review of the administrative decision by aggrieved persons.  *Id.*  Conversely, the Defendant(s)' policy for the enforcement in the City of Hattiesburg does not include a review process when someone is deemed guilty prior to their assigned court date, and where the individual is told they will lose their right to a hearing.  This does not even touch on the fact that Intellisafe represents that owners are guilty of speeding violations, ***even if they weren't driving***, that Intellisafe misrepresents that Purported Violators are at an "arraignment" when, in reality, it is nothing-more than a meeting with a representative of Intellisafe, and, Intellisafe is proceeding with the prosecution (or "quasi-prosecution") of ***unfiled, unsworn*** Citations.

4. Just like the plaintiff in *Stubbs*, the Plaintiff herein chose to voluntarily pay the citation instead of contesting it.  *Id.* at 1273-1274.  However, unlike the plaintiff in *Stubbs*, the Plaintiff herein only paid the Citation based upon the false and/or fraudulent misrepresentations offered to him by Intellisafe which were designed to coerce him into paying the fine.  Had the Defendant not made and/or offered the false or fraudulent statements complained of herein, the Plaintiff would never have "voluntarily" paid for any fine and only did so based upon the false and/or outright fraudulent misrepresentations made by Intellisafe.

For these reasons and because the *actual frauds* demonstrated here were not present in the *Stubbs* matter, the *Stubbs* decision is inapplicable to the present case.

Finally, the Defendant mistakenly argues that "Plaintiff's complaint in this case amounts to a complaint of the process itself, which is not a viable constitutional claim and does not amount to standing" and, "[a] review of the Plaintiff's extensive fifty-six page Complaint reveals that is, in essence, a complaint merely of process."[22] Yet again, the Defendant fails to articulate *why* the Plaintiff's Complaint is merely of process itself and provides no further argument, save for the blank statement that "Plaintiff's complaint…amounts to a complaint of the process itself." Even assuming *arguendo* that the Defendant did provide some factual basis for this fallacious argument, the law clearly provides for the relief which Plaintiff is seeking.

In this case, Plaintiff has alleged injuries pursuant to 42 U.S.C. § 1983 and § 1988, which are two-fold, one being a violation of his due process rights, and the other a violation of his equal protection rights under the law.  In discussing the history of claims brought pursuant to § 1983, the U.S. Supreme Court has stated that, "§ 1983 was intended not only to 'override' discriminatory or otherwise unconstitutional state laws, and to provide a remedy for violations of civil rights 'where state law was inadequate,' but also to provide a federal remedy 'where the state remedy, though adequate in theory, was not available in practice.'"  *Zinermon v. Burch*, 494 U.S. 113, 124 (1990) (quoting *Monroe v. Pape*, 365 U.S. 167, 173-174 (1961) (overruled in part for other reasons)).  The Court continued:

> This general rule applies in a straightforward way to two of the three kinds of § 1983 claims that may be brought against the State under the Due Process clause of the Fourteenth Amendment.  First, the Clause incorporates many of the specific protections defined in the Bill of Rights.  A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures.  ***Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them."  As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken.***  A plaintiff, under *Monroe v. Pape*,

---

[22] See *Memo* at p. 9.

may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights.

The Due Process Clause also encompasses a third type of protection, **a guarantee of fair procedure**. A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. ***Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what <u>process</u> the State provided, <u>and whether</u> it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.***

*Id.* at 124-126 (emphasis added, internal quotes and citations omitted).

A.    **Substantive Due Process.**

The substantive component of the due process clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986)); see also *Wash. V. Glucksberg*, 521 U.S. 702, 720 (1997) ("The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests."). Furthermore, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, ***or employing it as an instrument of oppression***." *Collins*, 503 U.S. at 126 (quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989)) (emphasis added). Yet, that is exactly what the Defendants are doing here.

In *Glucksberg*, the U.S. Supreme Court discussed the established method to analyze substantive due process claims, which has two primary features:

> ***First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition***," [*Moore v. East Cleveland*, 431 U.S. 494, 503 (1977)] (plurality opinion); *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934) ("so rooted in the traditions and conscience of our people as to be ranked as fundamental"), ***and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed***," *Palko v. Connecticut*, 302 U.S. 319, 325, 326 (1937). Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. [*Reno v. Flores*, 507 U.S. 292, 302 (1993); *Collins*, [503 U.S.] at 125; [*Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 277-278 (1990)]. Our Nation's history, legal traditions, and practices thus provide the crucial "guideposts for responsible decision making," *Collins, supra*, at 125, that direct and restrain our exposition of the Due Process Clause. As we stated recently in *Flores*, **the Fourteenth Amendment "forbids the government to infringe … 'fundamental' liberty interests at all, <u>no matter what process is provided</u>***, unless the infringement is narrowly tailored to serve a compelling state interest." 507 U.S. at 302.

*Glucksberg*, 521 U.S. at 720-721 (emphasis added).

One such principle that is deeply rooted in our legal history and tradition is the maxim of "innocent until proven guilty." Indeed, the U.S. Supreme Court recognized that "the presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law ... [i]t is stated as unquestioned in the text-books, and has been referred to as a matter of course in the decisions of this court and in the courts of the several States."[23] The *Coffin* Court went on to discuss the believed origins of this maxim from Biblical text, such as Deuteronomy, to the laws of Sparta and Athens, such that there can be no doubt that Roman law pervaded this maxim throughout its criminal justice system, as well as several treatises and examples of its application. *Id.* at 454-460.

---

[23] See *Coffin v. U.S.*, 156 U.S. 432, 453-454 (1895); see also *United States v. Hills*, 75 M.J. 350, 356 (CAAF 2016) (It is well-settled that, "[a] foundational tenet of the Due Process clause, U.S. Const. amend. V., is that an accused is presumed innocent until proven guilty.") (<u>citing</u>, *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

In his *Complaint*, the Plaintiff has detailed the (unconstitutional) process used in the policy promulgated, enacted, and enforced by, or on behalf of, the City of Hattiesburg. This process involves officers manning camera systems to capture the license plate numbers of Purported Violators in school zones within the City. However, the officers are not actually performing traffic stops, and therefore, do not (and cannot) positively identify the **<u>driver</u>** of the vehicle (who is the person actually committing the speeding violation). The officer then issues a sham traffic citation (or affidavit) which falsely accuses the **<u>registered owner</u>** of the vehicle of speeding, which is then processed and mailed to purported violators by Intellisafe, the non-governmental, non-judicial, third-party, for-profit, private entity with which the City of Hattiesburg contracted to administer the process. The Citation constitutes an affidavit by the officer who swears, **<u>under oath</u>**, that the individual named in the citation, "while operating the aforementioned motor vehicle, did willfully and unlawfully commit the offense of [speeding]…"[24] and contains a purported "court date" to appear for a hearing.[25]

As aforesaid, Intellisafe mails the Citations to Purported Violators along with instructions concerning their options, which include: 1) pay the citation in full, 2) pay to participate in a diversion program sponsored by Intellisafe, or, 3) call to schedule a court date to contest the citation. One must ask, why should the Plaintiff be required to schedule a court date to contest the citation when a court date has supposedly already been assigned to the Plaintiff to appear and be heard? The truth is because the "court date" listed on the Citation is not a "court date" at all.

---

[24] See a true and correct copy of the altered Uniform Traffic Citation received by Plaintiff attached to the *Complaint* as Exhibit "C."

[25] Interestingly, as discussed above, the Defendant, Intellisafe, in its *Memo* argues that the citation issued to the Plaintiff is not a sworn document. This is a profound statement considering that in order to bring even the most basic legal matter in the lowest court of the land, one ***must*** provide a ***sworn*** statement to support his or her claims. To not require even a sworn statement, while attempting to collect fines from members of the public, invites the type fraud complained of in Plaintiff's *Complaint*.

Instead, when a Purported Violator (such as the Plaintiff) appears to contest the Citation, he/she is met by representatives of Intellisafe who attempt to further sell purported violators on the illegal, unconstitutional policy and misrepresent to the Purported Violators that they are at an "arraignment."

The sum of this illegal, unconstitutional and conspiratorial policy and scheme together with the materials provided to the Plaintiff amount to nothing less than government-sponsored coercion, extortion and strong-arming by encouraging Purported Violators (including Plaintiff) to cut their losses and take the path of least resistance. This is specifically the type of oppressive conduct which the Fourteenth Amendment was enacted to prevent, i.e., a government employing its power as an "instrument of oppression."

### B.    Procedural Due Process.

With regard to procedural due process, the constitution protects citizens from the deprivation of life, liberty, or property without due process of law. "Property interests subject to procedural due process protection are not limited by a few rigid, technical forms...[r]ather, property denotes a broad range of interests that are secured by existing rules or understandings." *Estate of Holt v. City of Hattiesburg*, 800 Fed. Appx. 228, (5th Cir. 2020) (internal cites and quotations omitted). Additionally, "[p]roperty interest protected by the procedural due process clause include, at the very least, ownership of real estate, chattels, and money." *Id.*

In light of the fact that Plaintiff was deemed guilty **prior** to having the opportunity to be heard in court, the Plaintiff's due process rights, specifically his right to defend himself in court, were taken away from him. Because he was assessed a criminal penalty, threatened with a late fee if not paid by Intellisafe's arbitrary "due date," and threatened with other negative consequences simply because he did not cooperate with the Defendants' scheme by paying "on-

time" and caving to the demands of the Defendants, Plaintiff's injury is particularized and concrete, imminent and threatened, at the very least in the form of the money paid for the Citation. Also, despite having a scheduled court date, which in reality was a meeting with representatives of Intellisafe, or having the option to contest the citation, there is nothing in this policy that would describe the process to appeal the determination of guilt once a late fee is assessed after non-payment by the arbitrary due date, at which time the individual is told he will lose the right to a hearing. At bottom, Intellisafe is (1) deeming Purported Violators "guilty" by levying a $230.00 "fine" to be paid *prior to* the scheduled "court date"; (2) assessing a "late fee" if not paid by its arbitrary date; (3) fraudulently inducing and/or coercing Purported Violators (including Plaintiff) into paying a "fine" by making false and/or fraudulent statements; (4) falsely misrepresenting to Purported Violators that is has the power to conduct arraignments; and (5) stripping Purported Violators (including Plaintiff) of their right to due process under the Fourteenth Amendment.

### IV.    **Plaintiff has pled sufficient facts to state a claim for relief for due process violations.**

The Defendant's hollow arguments regarding Plaintiff's supposed failure to sufficiently allege a deprivation of a protected interest in life, liberty, or property literally "misses the forest for the trees." For instance, not one time within the entire three-plus pages of argument dedicated to this topic does the Defendant address (or even mention) the *frauds* which form the basis of Plaintiff's *Complaint* (and ultimately his due process claim). Interestingly, the Defendant goes to great lengths to discuss various case-law which is inapplicable to the instant matter because the ongoing frauds *were not present* in those cases and those cases were litigated in states (Alabama and Louisiana) which, unlike Mississippi, have laws that provide for the **civil enforcement** of traffic violations such as speeding.

By way of example, Defendant cites to the *Securix, LLC* case in support of the flawed argument that "numerous courts, including this one, have found similar traffic enforcement schemes to provide constitutionally adequate due process based in part ***on the sufficiency of notice provided***."[26]   However, that case was dismissed by the court based primarily on questions regarding the sufficiency of notice of a hearing.[27]

The court found that some of the plaintiffs paid all, or part, of the fee for the diversion program offered by the company, none of the plaintiffs had their driver's license suspended or revoked, and that no state court proceedings had been brought against any of the plaintiffs.  *Id.*  The plaintiffs' claims that no court date had ever been filed with the court also undercut the plaintiffs' insufficient notice arguments.  *Id.*  For those reasons, the court found there were no due process violations.  *Id.*

But, that case involved a Mississippi statute regarding the insuring of a motor vehicle by its owner.  To be clear, Mississippi law requires that the **registered owner** of any vehicle operated on the streets and highways of the State of Mississippi obtain insurance.  Thus, if a vehicle is found to be uninsured, the **owner** is in violation of Mississippi law.   In contrast, it is the **driver** of a vehicle that violates speed limits in Mississippi, not an **owner** who is not driving at the time of the violation.  Furthermore, there were no allegations in *Securix* of requirements to pay the fine **before** an individual was scheduled to appear in court, or that an individual would be assessed a fine and a late fee if they did not pay the fine by a certain time, and, the individuals in *Securix* were not deemed guilty ***without a hearing***, nor were the individuals told they would lose their right to a hearing if they did not pay by a date ***prior to their scheduled "court date."***  Additionally, there

---

[26] See *Memo* at p. 10 (emphs. added).

[27] See *Devine, et al. v. Securix, LLC*, No. 1:23-cv-196-HSO-BWR at *22-24 (S.D. Miss. Sept. 19, 2024).

was no representation made in *Securix* that the citation would be sent to a collection agency which could affect the individual's credit rating or that potential scoff law charges could ensue, as is the case here.

In short, the process in *Securix* did not evince such an exercise of oppressive conduct against the **owners** of vehicles which were already required by state law to purchase insurance coverage. Consequently, the scheme in *Securix* did not infringe upon a fundamental right such as due process. Due process claims are present in the instant matter and the Plaintiff has alleged unconstitutional, fraudulent and conspiratorial conduct, in detail, in his *Complaint*. In sum, *Securix* is both distinguishable and inapplicable. What's more, the alleged **frauds** were neither present in the *Securix* matter, and the other cases the Defendant relies upon in support of this argument likewise have no fraud component. Surely the Defendant is not saying that it is ok to defraud the Purported Violators (including Plaintiff), *so long as* the Defendant provides sufficient notice of same.

Additionally, the Defendant asserts that Plaintiff's due process claims "fail because a minor fine for a traffic violation is not a fundamental right." Again, Defendant apparently misunderstands Plaintiff's *Complaint* in that Plaintiff is attacking *both* the absence and/or deprivation of due process, as well as the legality of the traffic violation itself. The Defendant claims that "the fine of $230.00 for speeding in a school zone does not constitute a fundamental right in light of the controlling precedent" but that argument fails to account for the Plaintiff's **<u>due process rights</u>** under the Fourteenth Amendment. For the sake of brevity, Plaintiff would also incorporate by reference the foregoing arguments regarding due process which were previously set forth in "Section III" of this *Response*.

**V.    <u>Plaintiff has pled sufficient facts to state a claim for violations of his constitutional rights under the Sixth and Fourteenth Amendments.</u>**

First, the Defendant asserts that "Plaintiff waived his right to confront witnesses against him, including the ticketing officer, when he elected to participate in the diversion program rather than go to court."[28] Yet again, the Defendant fails to account for the fact that any "waiver" related to any right Plaintiff has (or had) regarding the Citation was based upon the fraudulent, false and/or otherwise deceptive statements offered by Intellisafe which were designed to coerce Plaintiff into paying the fine and entering into the diversion program. Plaintiff would never have paid the fine and entered into the diversion program had he known that Intellisafe had offered fraudulent statements which Plaintiff relied upon when making the decision to enter said program and pay the fine. Unfortunately, the Plaintiff was defrauded by the Defendant's acts and/or omissions regarding the Citation, including but not limited to the fraudulent, deceptive and/or outright false statements. Essentially, the Defendant is claiming that Plaintiff cannot pursue any Sixth Amendment claim because those claims "are now moot, as there are no charges pending against [Plaintiff]." Again, this argument fails to account for the fraud that induced Plaintiff to "waive" his right(s) and he never had an opportunity to confront the Hattiesburg police officer who signed the affidavit, swearing that he *knew* the Plaintiff was speeding when, in fact, he was not.

While it is true that "a party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury, such "purposeful discrimination" is viewed differently through the lens of an Equal Protection claim. For example, "[d]iscriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards*, 51 F. 3d 577, 580 (5th Cir. 1995) (*quoting United States v. Galloway*, 951 F. 2d 64, 65

---

[28] See *Memo* at p. 14.

(5th Cir. 1992).   Additionally, "[a] violation of the equal protection clause occurs only when…the governmental action in question classifies or distinguishes between two or more relevant persons or groups." *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996).   Here, the Defendant(s) treated (and continue to treat) all other speed violators differently than those cited for speeding within a school zone pursuant to the scheme and policy orchestrated by the Defendants.   Indeed, all other speed violators in the State of Mississippi are afforded an actual traffic stop to properly and positively identify them prior to the issuance of any citation.   This is because the ***crime*** of speeding is considered a criminal misdemeanor in Mississippi.   Thus, any officer who issues a speeding citation must ***know*** **who** committed the crime.   By failing to pull over the Purported Violators (including Plaintiff) who are issued Citations pursuant to the illegal and unconstitutional scheme, the officers are treating the Purported Violators differently than all other persons who receive a citation for speeding in the State of Mississippi.

Likewise, the Defendant(s) selected and/or adopted the illegal and unconstitutional scheme and policy *at least in part*, because of the adverse impact it would have on an identifiable group (speed violators in school zones).   In other words, the Defendant(s) chose to enter into the scheme because of the (substantially) increased revenue that could be generated by issuing the Citations within school zones without traffic stops under the guise of "protecting kids."   Obviously, without having to effectuate a traffic stop prior to issuing a Citation, an officer can write far more tickets than if he was pulling over each speeding vehicle.   So, the impetus for entering into the illegal, unconstitutional and conspiratorial scheme is increased revenue to the Defendants, and, any person who receives a Citation as a result of the scheme and policy is no doubt treated differently than all other speed violators in the State of Mississippi.

Finally, the Defendant attempts to persuade the Court to view the scheme and policy

through the lens of the rational basis standard, but strict scrutiny applies in cases involving constitutional violations such as here. Clearly, the Plaintiff has plausibly pled violations and/or deprivations of his constitutional rights, including but not limited to, his due process and equal protection rights, and such violations and/or deprivations must be examined under the strict scrutiny test. Indeed, the Fourteenth Amendment "forbids the government to infringe [upon]...'fundamental' liberty interests at all, **no matter what process is provided**, unless the infringement is narrowly tailored to serve a compelling state interest." *Wash. v. Glucksberg*, 521 U.S. 702, 720-21 (emphs. added). Here, the Defendant applies the incorrect standard and the Court should ignore the arguments concerning the rational basis test in Section "V" of the *Memo* as they are inapplicable to the case at bar.

### VI.    Plaintiff has pled sufficient facts to establish an abuse of process claim.

First and foremost, the Defendant's arguments in Section "VI" attempt to convert the instant Motion into one of summary judgment, rather than a failure to state a claim pursuant to F.R.C.P. Rule 12(b)(6). For example, the first sentence of Defendant's argument in this section states, "[t]he **record** is devoid of any **evidence** to support the Plaintiff's claim of abuse of process."[29] Perhaps the reason the record is "devoid of any evidence" is the fact that the record currently consists of only the Plaintiff's *Complaint* and the Defendant's *Motion* and supporting *Memo*.

Obviously, the Court does not review the **record**, nor the **evidence**, when considering a Rule 12(b)(6) motion as such motions are limited to the contents of the complaint, and the allegations therein must be taken as true. For these reasons alone the Court should decline to consider the Defendant's arguments in Section "VI." The remaining arguments in this section are

---

[29] See *Memo* at p. 15.

equally fatal as the Defendant merely disputes the facts set forth in Plaintiff's *Complaint*, but those facts **must be taken as true** when considering the Defendant's *Motion*.  Accordingly, the Court must ignore the argument contained in Section "VI" as they are inapplicable to the instant *Motion* and do not rely upon the applicable standard when considering a motion pursuant to Rule 12(b)(6).

VII.    **Plaintiff has pled sufficient facts to state a claim for fraud against Defendant Intellisafe.**

Like many of the other arguments asserted in the Defendant's *Memo*, Section "VII" misrepresents the allegations in Plaintiff's *Complaint*, stating that "Plaintiff makes general allegations of fraud based on an 'Exhibit B' that was never sent to him and is no longer in existence."[30]  For the convenience of the Court, "Exhibit B" as attached to Plaintiff's *Complaint* represents the "FAQ" document which was offered to Plaintiff by Intellisafe in an effort to induce him into paying the fraudulent fine.   While it may be true that Exhibit B was not "sent" to Plaintiff, he was nevertheless directed to the contents of Exhibit B by Intellisafe and Intellisafe intended for Plaintiff to rely upon the contents of Exhibit B when considering his options related to the Citation. Had the Defendant(s) been truthful regarding the true circumstances surrounding the complained-of citation, the Plaintiff would have been properly and truthfully informed as to the options available to him.   Instead, the Defendant(s) offered false statements and information (through Exhibit B) which were designed to coerce and extort a monetary payment from Plaintiff.

The Defendant is also attempting to interject arguments into the *Motion* that did not exist in the Plaintiff's *Complaint*, and, again, for purposes of a Rule 12(b)(6) motion to dismiss, the Court may only consider the contents of the complaint, which must be taken as true.  As previously shown, the Defendant misrepresented in the *Memo* that Exhibit "B" was never "sent" to Plaintiff,

---

[30] See *Memo* at p. 17.

but Plaintiff never alleged that Exhibit B was "sent" to him, rather that Intellisafe provided Plaintiff and the other Purported Violators with Exhibit B as justification for the Citation.

Also, the Defendant claims that "[t]he Citation is not sworn to by the issuing police officer because said officer only does so when he files the Citation with the court." So, the Defendant is admitting that it is pursuing monetary payment, or "prosecuting," citations with no underlying authority to do so because the citations are **never filed**, at least not until the day before the *actual* court hearing on a citation. In the meantime, Intellisafe is attempting to collect an uncollectable debt (or fine) through fraudulent means. Make no mistake, there is no reasonable defense to the fact that Intellisafe has represented to thousands of Purported Violators that "as the owner of the automobile, you are responsible for the Citation *even if you weren't driving*."[31] Now Intellisafe has taken the position that "Exhibit B was never sent to [Plaintiff] and is longer in existence," but that is a blatant mischaracterization of the interaction between Plaintiff and Defendant Intellisafe as Intellisafe fully intended for Plaintiff to rely upon the fraudulent statements contained therein.

Finally, Intellisafe makes the demonstrably false statement that "Intellisafe employees are limited in what they are permitted to say to motorists who call in, and *they are not trained to refer to anything as an arraignment*." An email sent from Intellisafe's "Help Desk" to a Purported Violator in October of 2024 contains the following explanation of the Citation(s) and the underlying process:

> Ma'am
>
> We work directly with the Hattiesburg PD and the Hattiesburg Municipal Court. If you would like to contest your ticket, then you may do so through this email and we will turn over your information to the Municipal Court so that they can issue you a Letter of Summons. **Your citation already has a Court Date of 11/25/24 for an <u>arraignment</u>, which will be the opportunity for you to choose from the previous options <u>by speaking with a company representative.</u>** To forgo this,

---

[31] See Exhibit B attached to Plaintiff's Complaint which represent a true and correct copy of the "FAQ" document offered to Plaintiff by

please reply back to this email that you would "Like to contest" and we will have your information turned over to the court for processing, and you will not have to take time out of your day on the 25th to appear in person.  By choosing this option over email it will expedite the process.

If you do not reply to this citation, then whatever action the city decides to take on this matter will be due to your inaction.[32]

To be clear, this email was sent to a Purported Violator from the Defendant Intellisafe's "Help Desk" which operates as a resource to any Purported Violator who may have question about their Citation, or who may want to dispute it.  Thus, *in its own words*, the Defendant is clearly representing to Purported Violators that it is actively conducting arraignments.  So, Intellisafe is falsely representing to the Court that it does not tell Purported Violators they will be attending an arraignment when the email unequivocally shows that Intellisafe **IS** telling Purported Violators that they will be attending an "arraignment" and is also falsely representing that it possesses the power of the municipal court.

## VIII. <u>Plaintiff's claims for punitive damages are valid and supported by the law and facts of this case.</u>

Miss. Code Ann. § 11-1-65 provides that punitive damages may be awarded if the claimant proves by clear and convincing evidence that a defendant acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, ***<u>or committed actual fraud</u>***.[33]  At this nascent stage of the proceedings the Plaintiff need not *prove* any set of operative facts but, instead, the Court must take all well-pled allegations as true and indulge all reasonable inferences in favor of the Plaintiff.[34]

---

[32] A true and correct copy of this email exchange is attached hereto and labeled Exhibit "D".

[33] See Miss. Code Ann. § 11-1-65(1)(a).

[34] *Gould*, 935 F. 2d at 1274.

In this case, is it clear *on its face* that the Defendant(s) have committed **actual fraud** by using false, misleading and/or outright fraudulent statements which were meant to induce the Purported Violators (including Plaintiff) into paying fines which are neither collectable, nor legal in the State of Mississippi.  Just as an example, when the Defendant informed the Purported Violators that "you are responsible for this Citation, even if you weren't driving," and then accepted a monetary payment (or "fine") based upon that false statement, they committed *actual fraud* as defined by law.  Simply put, the Defendant(s) cannot use false and/or otherwise fraudulent statements to coerce Purported Violators (including Plaintiff) into paying monetary fines **which are not even collectable in the first place**.  The aforementioned *actual fraud* is just the tip of the iceberg when it comes to the "totality of the circumstances" regarding the Defendant's willful, wanton, and fraudulent conduct.

Indeed, "[a] punitive damages award not only serves as a deterrent, it also compensates the plaintiff for its public service in bringing the action," and "the basis in awarding [punitive] damages is to reward a plaintiff for public service in bringing the wrongdoer to account."[35]  That is precisely what the Plaintiff is seeking to accomplish through this litigation, i.e., "to bring the wrongdoer to account."   In any event, the law also commands that punitive damages may be considered only *after* compensatory damages have been awarded and "the court must conduct an *evidentiary hearing* to determine whether the issue of punitive damages may be submitted to the

---

[35] *See United Servs. Auto. Ass'n v. Est. of Minor*, No. 2023-CA-00049-SCT, 2024 Miss. LEXIS 331, at *36 (Dec. 5, 2024); *See also Dixie Ins. Co. v. Mooneyhan*, 684 So. 2d 574, 585-86 (Miss. 1996); *Bankers Life & Cas. Co. v. Crenshaw*, 483 So. 2d 254, 269 (Miss. 1985), *aff'd*, 486 U.S. 71, 108 S. Ct 1645, 100 L. Ed. 2d 62 (1988) (citing *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 141 So. 2d 226 (1962)).

trier of fact.[36]  Thus, it is premature to determine the issue of punitive damages when considering a Rule 12(b)(6) motion and the Court should deny the relief requested in Section "VIII."

    **IX.**    **Plaintiff has pled sufficient facts to state a claim for civil conspiracy.**

The Defendant has correctly argued in its Motion that, "[u]nder Mississippi law, a civil conspiracy is simply a combination of persons who conspire for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Ward v. Life Invs. Ins. Co. of Am.*, 383 F. Supp. 2d 882, 890 (S.D. Miss. 2005) (citing *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985)).   In this case (and as alleged in the Complaint), the Defendants have conspired for the purpose of accomplishing an unlawful purpose, or, *at the very least*, have conspired to accomplish a lawful purpose unlawfully.

To be sure, by executing the false and/or fraudulent affidavits (the Citations) without executing a traffic stop to determine who was actually driving and then forwarding such Citations to Purported Violators (including Plaintiff) along with false and/or fraudulent statements which were designed to coerce them into paying "fines" which are neither collectable, nor legal under the law in Mississippi, the Defendants have conspired to accomplish an unlawful purpose, or, to accomplish a lawful purpose unlawfully.  In any event, when considering a Rule 12(b)(6) motion such as here, the Court must accept as true all factual allegations set forth in the Complaint.  So, the Defendant's arguments regarding Plaintiff's conspiracy allegations are premature.  Finally, the Plaintiff has sufficiently pled fraud in the Complaint, as well as violations of his (and the Proposed Class's) constitutional rights.   For these reasons, the Court should decline to consider the arguments contained in Section "IX" and/or deny the relief requested therein.

    **X.**    **Plaintiff's request for class action certification should be granted.**

---

[36] *See* Miss. Code Ann. § 11-1-65; *See also Bradfield v. Schwartz*, 936 So. 2d 931, *Henson v. Riggenbach*, 982 So. 2d 432.

Again, the Defendant's arguments contained in Section "X" and related to class action certification are premature.  Nevertheless, the Plaintiff will address the arguments contained in Section "X," as follows:

1)  This litigation does not involve subject matter jurisdiction based upon the Class Action Fairness Act (CAFA) and the Complaint makes no such allegations based upon CAFA;

2)  Again, the Complaint makes no mention of CAFA and Plaintiff does not rely upon its dictates to establish jurisdiction in this Court;

3)  Plaintiff has pled viable federal question claims under § 1331 and the class-allegations in the Complaint speak for themselves.  Furthermore, the

4)  Plaintiff's Complaint clearly stated that "[t]he members of the proposed class are so *numerous* and geographically dispersed that joinder is impracticable.  Plaintiff believes that ***thousands*** of people geographically dispersed across the State of Mississippi, as well as other states, have been damaged by the co-conspirator Defendants' actions."  Clearly, the Plaintiff has sufficiently pled numerosity.

5)  The Defendant alleges that "[t]he named plaintiff is not an adequate representative for the reasons stated *supra*" but does not specifically articulate why the Plaintiff is not an adequate representative, nor does the Defendant make any argument, whatsoever, as to why the Plaintiff could not adequately represent the proposed class.  Therefore, Plaintiff cannot reasonably be expected to respond to this hollow and unsupported argument.

6)  Once again, the Defendant makes the wholly unsupported argument that "[t]he class is vague and not ascertainable," but provides no further argument in support of that baseless allegation.  The Defendant fails to articulate *why* the class is vague and cannot be ascertained.  Thus, the Plaintiff cannot possibly respond to an argument where none exists.

**XI.  Plaintiff's state law claims should not be dismissed as the Court has supplemental jurisdiction over those claims.**

While it is true that 28 U.S.C. § 1367(c)(3) states that the Court may decline to exercise supplemental jurisdiction ***when it "has dismissed all claims over which it has original jurisdiction.***"  Here, the Court has not even considered the Plaintiff's claims which form the basis of original jurisdiction.  Again, the Defendant's arguments concerning supplemental jurisdiction are premature.  However, even assuming *arguendo* that the Defendant's arguments are timely,

they still must fail as Plaintiff has sufficiently pled claims for relief pursuant to federal law under § 1983. For these reasons, the Court should deny the relief requested in Section "XI."

**XII.** **There is no justifiable basis for the Defendant's Motion to Stay and the Defendants fails to offer a scintilla of reasoning as to why the Court should grant the motion.**

Having addressed the Defendant's *F.R.C.P. 12(b)(6) Motion to Dismiss* and accompanying *Memo*, the Plaintiff would now turn to the Defendant's *Motion to Stay*, or lack thereof. The Court will note that the heading of the Defendant's *F.R.C.P. 12(b)(6) Motion to Dismiss* also requested, in the alternative, a "*Motion to Stay.*" However, the only reference to such a motion absent the aforementioned-language within the heading of the Motion is contained within the final sentence of the Motion wherein the Defendant makes the request that "WHEREFORE all claims against this Defendant should be dismissed with prejudice **and/or <u>stayed</u> pursuant to F.R.C.P. 12(b)(6)**." The Defendant fails to articulate the grounds for the relief requested and fails to provide any factual basis for why the Court should grant its Motion to Stay. Indeed, the Defendant merely requests that the proceedings be "stayed pursuant to F.R.C.P. 12(b)(6)" but fails to provide any additional argument or reasoning to support that Motion. Moreover, F.R.C.P. Rule 12(b)(6) does not provide for a "motion to stay" and, instead, addresses motions to dismiss for failure to state a claim. Because the Defendant wholly failed to provide any reasonable basis to support its Motion to Stay, the Court should deny said Motion in its entirety.

WHEREFORE, PREMISES CONSIDEREED, the Plaintiff respectfully requests this Court to deny the Defendant, Intellisafe's, Motion to Dismiss pursuant to Fed. R. civ. Proc., Rule 12(b)(6) and 9.

**RESPECTFULLY SUBMITTED** this the 16th day of April, 2025.

GERRY MALLORY,
*PLAINTIFF*

BY:  _/s/Ronald V. Johnson, IV_____
     RONALD V. JOHNSON, IV (MSB# 105950)
     DEAKLE-JOHNSON LAW FIRM, PLLC
     Post Office Box 2072
     Hattiesburg, Mississippi 39403
     Telephone: (601) 544-0631
     Facsimile: (601) 544-0699
     Email:  rvjohnson@djlawms.com

*Attorney for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which provides notice of same to all counsel of record registered with the CM/ECF system.

This the 16th day of April, 2025.

     _/s/Ronald V. Johnson, IV_____
     Ronald V. Johnson, IV
     *Attorney for Plaintiff*