**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

GERRY MALLORY, Individually and on
Behalf of all Others Similarly Situated,

           *Plaintiff,*

        v.

CITY OF HATTIESBURG,
INTELLISAFE, INC., ANNA RUSH,
STEVEN ADAMSON, ELIZABETH
PORTER, CHIEF HARDY SIMS,
JOHN DOES 1-10, and
ACME COMPANIES 1-10

           *Defendants*.

**Case No. 2:25-cv-10-LG-BWR**

<u>**AMENDED MEMORANDUM BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**</u>

**"Our entire criminal justice system is premised on the notion that a criminal prosecution pits the government against the governed, not one private citizen against another."[1]**

COMES NOW, the Plaintiff, by and through undersigned counsel of record and files this his *Amended Memorandum Brief in Support of Plaintiff's Motion to Alter or Amend Judgment*, and would show unto the Court the following, to-wit:

First and foremost, let me be clear, Plaintiff and his counsel believe the safety of children, particularly in school zones, is of the utmost importance. Having said that, for the reasons stated in his Complaint, and other pleadings, as well as below, Plaintiff does not believe the method by

---

[1] *Robertson v. Watson*, 560 U.S. 272, 278 (2010) (Roberts, C.J., dissenting).

which the Defendants are attempting to protect children is constitutional, effective, or achieves a compelling state interest; and there are ways to protect the safety of children without trampling on the constitutional rights of others.

On January 27, 2025, Plaintiff, Gerry Mallory, filed his Complaint [1] in this matter against the Defendants alleging various causes of action regarding a policy promulgated, enacted, and/or enforced by, or on behalf of, the City of Hattiesburg to enforce certain traffic laws within school zone that violated the constitutional rights of the Plaintiff, and others, and is based on fraud, among other claims. On March 26, 2025 and April 9, 2025, Defendants, IntelliSafe and the City Defendants filed motions to dismiss, respectively documents [12] and [16], pursuant to F.R.C.P. 12(b)(6). On October 14, 2025, the Court entered its Memorandum Opinion and Order [28] dismissing, with prejudice, Plaintiff's federal claims, and without prejudice Plaintiff's state law claims.

The gravamen of the Court's ruling is, because Plaintiff paid the citation by, and through, IntelliSafe he has plead guilty to a criminal misdemeanor, and therefore:

1. has no standing, and cannot prove a causal connection, regarding his procedural due process claims;

2. has failed to state a substantive due process claim; and

3. Plaintiff is not a member of a protected class and there is no fundamental right involved in this matter, therefore, the Court applied the rational basis test and found Plaintiff failed to state an equal protection claim.

However, the Court's reasoning is flawed and untethered to the facts; and if left as is, would be a clear error of law resulting in manifest injustice for thousands.[2,3] In such circumstances,

---

[2] Plaintiff will address other errors in the Court's ruling below.

[3] Upon information and belief, and pursuant to local news articles, more than 3,000 of these citations have been issued.

reconsideration and reversal is warranted:

> A Rule 59(e) motion "calls into question the correctness of a judgment." Rule 59(e) relief is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact.

*Durham v. Ankura Consulting Grp., LLC*, 2023 U.S. Dist. LEXIS 101068, *7 (S.D. Miss. May 5, 2023) (internal cites and quotations omitted).

## I.    **Pertinent Facts**

With regard to this Court's errors of law and facts, for which reconsideration and reversal is warranted, one must consider the following facts[4] discussed in Plaintiff's Complaint as true:

1.  Traffic violations, specifically speeding, are **criminal misdemeanors** pursuant to Mississippi statutes, and even the ordinances at issue in this case.[5]

2.  **Without any authority to do so**, the City of Hattiesburg has contracted with IntelliSafe, a non-governmental, non-judicial, private, for-profit company, to enforce its traffic laws, specifically the criminal offense of speeding in a school zones, (hereinafter the "Policy").

3.  By doing so, drivers in school zones are treated differently than drivers outside of school zones.

4.  The City of Hattiesburg, **without any authority to do so**, has outsourced its criminal justice system to IntelliSafe with regard to these offenses.

5.  IntelliSafe has **no authority** to operate as a judicial system, and **cannot** accept a guilty plea from anyone.

---

[4] This is not an exhaustive list of facts in Plaintiff's Complaint, only those pertinent to the issues in this Motion.

[5] A reading of this Court's Memorandum Opinion and Order does not appear to question this fact, despite Defendants' attempts to transform this criminal misdemeanor into a civil infraction.  However, *see* Miss. Code Ann. § 21-13-19, § 63-9-11(1), § 63-3-201, and § 63-3-209; Hattiesburg City Ordinances 890, 1058, and 2721; and Hattiesburg's Code of Ordinances Sec. 25.21.

6. Mississippi law *requires* a citation for speeding to be *sworn to and filed* with a court of competent jurisdiction *before* it can be prosecuted.[6,7]

7. The citations issued pursuant to the policy complained of in Plaintiff's Complaint are *not filed with the municipal court*.[8]

8. The officers issuing these citations *do not* perform a traffic stop, and *do not know* who is driving the offending vehicle.

9. The citations are issued to the *owner* of the vehicle, and not the *driver* of the vehicle at the time of the violation, i.e.- the one who was actually speeding. [9]

10. A false court date is listed on the citation, and in reality, one who shows up for such hearing, will meet with a representative of IntelliSafe.[10]  In Plaintiff's case, the court date was listed as September 23, 2024.

11. An arbitrary "Due Date" is listed on the paper work received by the owner that *predates* the court date on the citation.  In Plaintiff's case, the "Due Date" was September 15, 2024 (a Sunday).  However, Plaintiff only received his citation the day before, on September 14, 2024 (a Saturday).

12. If a purported violator fails to pay the citation by the arbitrary "Due Date," a late fee is assessed and the purported violator *loses their right to a hearing*.  Furthermore, it can be forwarded to a collections company, resulting in additional penalties.

---

[6] *See* Miss. Code Ann. § 63-9-21(3)(c).

[7] Plaintiff has stated sufficient facts in his Complaint to call into question the very validity of the citation at issue in this matter.  Indeed, in its Motion to Dismiss, IntelliSafe, the very company attempting to "prosecute" and handle these citations, admits in black and white that these citations are "*not sworn to or filed.*"  See IntelliSafe's Memorandum Brief in Support of Defendants' F.R.C.P. 12(b)(6) Motion to Dismiss or, in the Alternative, Motion to Stay [13] (hereinafter "IntelliSafe's Memo"), page 2, paragraph 4 and 5.

[8] Again, Intellisafe admits in black and white that "[t]hus, no criminal prosecution is undertaken until the citation is sworn to by the police officer and filed with the court."  *See* IntelliSafe's Memo, page 2, paragraph 6.

[9] The Court recognized that the Plaintiff omits a statement that he was not driving at the time of the violation. This was an inadvertent omission, and the facts that will be developed through discovery will support that he may not have been driving at the time of the violation.  However, for the purposes of Plaintiff's allegations alleged in his Complaint, and for the reasons discussed herein, *who was driving is not a determining factor*.

[10] Plaintiff is in possession of a voice recording taken during IntelliSafe's arbitrary "hearing date," wherein a representative of IntelliSafe can be heard telling Purported Violators that they are at an "arraignment" hearing.  Without the authority to operate as a judicial system, and without the authority to accept a guilty plea from anyone, IntelliSafe cannot perform "arraignments."

4

13. The assessment of a fine, and/or late fee, ***prior*** to a court date, deems the purported violator guilty without a hearing, and violates the individual's constitutional rights.

14. The City Defendants knew, and know, the problems associated with the Policy and the citations issued as a result thereof, and have utterly failed to prevent the violations.

## II.    <u>Discussion</u>

"Motions to dismiss pursuant to Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Jones v. Tyson Foods Inc.*, 971 F. Supp. 2d 632, 637 (N.D. Miss. 2013) (quoting *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012)).  In determining whether a case should be dismissed, "[t]he ultimate question […] is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Id.* (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

"At the 12(b)(6) stage, a plaintiff's burden [in a § 1983 claim] to allege an unconstitutional policy, practice or custom is not onerous." *Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471, 491 (E.D. Tex. 2022).  In order to survive a motion to dismiss based on Rule 12(b)(6), the plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Favre v. Sharpe*, 2024 U.S. App. LEXIS 23519, *6 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).  Furthermore, "the court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible." *Jones*, 971 F. Supp. 2d at 638.

The Court has recognized that Plaintiff has plead "substantial facts" in his Complaint. When viewed as true, pursuant to the applicable standard, Plaintiff's Complaint is more than sufficient to state plausible claims on its face, upon which relief may be granted.  The crux of the Court's ruling is based on the fact that Plaintiff paid the citation, and therefore plead guilty, so

there was no constitutional violation of Plaintiff's rights. However, there are several serious issues with the Court's position.

A.    **Standing and Procedural Due Process.**

The Plaintiff submits that he has satisfied the requirements regarding standing in order to bring this cause of action. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In order to prove standing, the Plaintiff must prove that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." [11] *Id.*

In order to establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For an injury to be particularized, a plaintiff must show that the injury affected him or her in a personal and individual way. *Id.* (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (plaintiff must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.")). The injury must also be concrete, meaning that it must be real and actually exist, not in the abstract. *Id.* at 340. "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to

---

[11] The Court does not address the third element of standing as it is not in dispute. Indeed, the Court took notice that "[i]t has not been disputed that the relief Plaintiff seeks – an order declaring the policy unconstitutional, awarding damages, and enjoining further use of the specialized speed cameras and issuing Citations by mail – would redress any injury." *See*, Memorandum Opinion and Order, page 11, footnote 12.

recognize, [the U.S. Supreme Court has] confirmed in many […] previous cases that intangible injuries can nevertheless be concrete." *Id.*

The Court takes issue with the causal connection between the Defendants' conduct and the Plaintiff's injury, stating the Plaintiff cannot establish such a connection. With regard to the injury-in-fact, the Court found there to be no deprivation of right regarding Plaintiff's right to a hearing, because he fell prey to Defendants' fraud and paid the citation as demanded, effectively pleading guilty. However, the fact that this Court makes no distinction between a valid, sworn to and filed criminal misdemeanor charge, and a non-existent charge, such as we have in the case at bar, is incredulous.[12]

First, it is important to take note of certain timing issues. The Plaintiff has been accused by nothing more than an unsworn, unfiled statement that he committed the criminal act of speeding in a school zone on August 13, 2024 at 3:04 p.m. As stated in Plaintiff's Complaint, pursuant the Policy, he received a citation in the mail on September 14, 2024, that was a Saturday, and the arbitrary "Due Date" listed on the documentation was September 15, 2024, a Sunday. Plaintiff was incapable of contacting anyone to contest the citation on a weekend.[13]

As alleged in Plaintiff's Complaint, if a purported violator fails to pay the citation by the arbitrary "Due Date," a late fee is assessed and the purported violator **loses their right to a hearing**. At that point in time, Plaintiff was deemed guilty, and without being able to contact anyone to

---

[12] *See*, Memorandum Opinion and Order, page 13, note 16.

[13] Incidentally, when one calls the number listed on the citation, one hears a message from the call center for Hattiesburg which is only open from Monday through Friday, 9:00 a.m. to 6:00 p.m. Furthermore, when one goes to the stated website, there is nowhere to schedule a hearing or indicate one would like to contest the citation, except for sending an email which would not be read until Monday, in Plaintiff's case this would have been after the "Due Date" and he would have been assessed a late fee and lost his right to a hearing anyway.

inform of his wish to contest the citation, Plaintiff was faced with paying $230 or $260, either way without a hearing, and prior to the listed court date. In fact, it is interesting to note that **none** of the three options provided by the Defendants on the citation included showing up at the hearing on the date listed, the so-called "court date," to contest the citation.

Therefore, this case is distinguishable from the *Rector* case cited by the Court in that there was no allegation that the plaintiffs would have lost their right to a hearing if they paid the ticket late, as there is in the case at bar.[14] Furthermore, the Court recognizes that "*Codd* thus establishes that failure to provide a hearing does not violate due process so long as the claimant does not contest the legitimacy of the underlying deprivation." Quoting *Rector*, 348 F.2d at 944. Plaintiff herein does contest the legitimacy of the underlying deprivation, that is that he was unable to contest the citation before the "Due Date," after which time he would lose his right to a hearing.

As it pertains to the payment of the $230, the Court took notice that IntelliSafe did not contest its sufficiency as being an injury, and the Court also found it to be sufficient for Article III standing.[15] But, yet again, the Court finds no standing because the Plaintiff fell prey to the Defendants' fraudulent actions. However, the Court's reasoning again ignores Plaintiff's allegations that he would lose his right to a hearing if he did not pay by the Defendants' arbitrary "Due Date."

It is inconceivable that, faced with his options, deciding to save $30 in the payment of the fine, when he was going to lose his right to a hearing anyway, regardless of his decision, does not

---

[14] *See*, Memorandum Opinion and Order, discussing *Rector v. City and Cnty. Of Denver*, 348 F.2d 935 (10th Cir. 2003), page 11 – 13.

[15] *See*, Memorandum Opinion and Order, page 13 – 16. The Court recognized that "[p]roperty interest protected by the procedural due process clause include, at the very least, ownership of real estate, chattels, and money." *Estate of Holt v. City of Hattiesburg*, 800 Fed. Appx. 228, (5th Cir. 2020) (internal cites and quotations omitted).

equate to a causal connection.  Plaintiff has an injury-in-fact regarding the deprivation of a hearing and to defend himself.

## B.    <u>Substantive Due Process.</u>

With regard to Plaintiff's substantive due process arguments, the Court recognized "[t]he Due Process Clause provides heightened protection against government interference with certain fundamental rights and liberty interests."  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), and that the clause "specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'"  *Id.*  Parenthetically, the Court noted "that a fundamental right is a right either explicitly or implicitly guaranteed by the Constitution."  *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-34 (1973).[16]

There can be no doubt that the presumption of innocence is a fundamental right.  *See Hernandez v. Beto*, 443 F.2d 634, 636-37 (5th Cir. 1971) (wherein the court found "trying Hernandez in his prison clothing infringed a fundamental right – the presumption of innocence.").  *See also*, *Coffin v. U.S.*, 156 U.S. 432, 453-454 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.  It is stated as unquestioned in the text-books, and has been referred to as a matter of course in the decisions of this court and in the courts of the several States."); and *United States v. Hills*, 75 M.J. 350, 356 (CAAF 2016) (It is well-settled that, "[a] foundational tenet of the Due Process clause, U.S. Const. amend. V., is that an accused is presumed innocent until proven guilty.") (<u>citing</u>, *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); and *U.S. v. Moreland*, 665 F.3d 137, 148 (5th Cir. 2011) ("[T]he Due Process Clause of the Fourteenth Amendment, which forbids

---

[16] *See*, Memorandum Opinion and Order, page 16.

conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.' This requirement 'provides concrete substance for the presumption of innocence – that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." (internal cites and quotations omitted)).

The Court goes so far as to state that it will assume, without deciding, that "innocent until proven guilty" – stated another way, the presumption of innocence – is a fundamental right. It also notes "there can be no adjudication of guilt of a misdemeanor because the ticket had not yet been filed with the Municipal Court," and that the citation becomes the charging document only when "duly sworn to and filed with a court of competent jurisdiction…."[17] Yet the Court finds the Plaintiff fails to state a claim this right was infringed because the documentation includes language that "Participation in the diversion program is deemed an admission of guilt and waiver of your right to appeal."[18]

The Court is missing the mark entirely. Because the citation is unsworn and unfiled, ***there is no charge to which to plead guilty, and furthermore, no entity before which to plead guilty***, certainly not a non-governmental, non-judicial, private, for-profit company that has ***no authority to accept guilty pleas***. The Court also overlooks the language in the documentation which states, "[f]ailure to deal with this citation may result in this being forwarded to a collections company, which could result in additional penalties." ***There can be no collection of a fine or additional penalties without a court hearing.*** There is no mention whether the citation would first be sworn

---

[17] *Id.*

[18] *See*, Memorandum Opinion and Order, page 17.

to and filed with a court of competent jurisdiction, nor that Plaintiff would receive a summons to the municipal court.

The imposition of a fine, and the threat of a late penalty, collections, additional penalties, and loss of hearing rights if the fine is not paid by the arbitrary "Due Date," prior to either a formal charge being made, or a court hearing, all without even being identified as the driver of the vehicle, cannot be anything other than being deemed guilty and deprived of his fundamental right of the presumption of innocence.

While the Court takes the position the Plaintiff plead guilty under the circumstances described in the Complaint, and herein, it is important to note:

> A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. . . . Out of just consideration for persons accused of crime, courts are careful that a ***plea of guilty shall not be accepted unless made voluntarily*** after proper advice and with full understanding of the consequences."

*Von Moltke v. Gillies*, 332 U.S. 708, 719 (1948) (emphasis added).

To lay bare how dire such a position would be, and by way of illustration, let us assume the following:

- Let us assume Plaintiff was driving.[19]

- Let us assume an officer actually performed a traffic stop and properly identified Plaintiff as the driver and the one who committed the violation.

- Let us assume the officer properly issued a citation, which was subsequently sworn to and filed with the proper court.

- Let us assume a private entity reached out to Plaintiff to inform him it is collecting the fine on behalf of the City, when in fact it had no authority to do so.

- And, let us assume the Plaintiff fell for the private entity's fraudulent statement and paid the fine to it.

---

[19] *See supra* note 9.

When the Plaintiff appears for his hearing before the municipal court, one must ask the following questions:

- Would the municipal court take the position that the private entity had the authority to accept the Plaintiff's guilty plea and payment of the fine, and what was that authority based upon?

- Would the municipal court take the position that the Plaintiff could plead guilty to the private entity?

- Would the municipal court take the position the fine for the citation had been resolved?

- Would the Plaintiff still have the right to defend himself before the municipal court?

- Or more importantly, what if the Plaintiff did not appear before the municipal court at all? Would the court issue a warrant for his arrest?

While these questions seem to be a bit of a reach, they are not so farfetched from the facts in the case at bar. The City of Hattiesburg has no authority to outsource its criminal justice system, and IntelliSafe has no authority to accept a guilty plea from anyone. Yet this Court appears to succumb to the notion that the privatization of the City's criminal justice system is acceptable.[20] If that is the case, why have a court system at all? Why not outsource all courts to private entities? It could be justice to the highest bidder. The haves versus the have nots.

This would be the epitome of manifest error of law and a perversion of justice.

**C.** **Equal Protection.**

The Court quotes *Johnson* stating "[t]o establish an equal protection violation, a party cannot merely prove disparate impact, he must 'prove "the existence of purposeful discrimination"

---

[20] The justice system is designed in a manner that it is supposed to be neutral among the parties in a proceeding, whether civil or criminal. Indeed, there is a plethora of rules and laws designed to ensure impartiality by judges and to prevent nepotism in the justice system. This impartiality is so important that it is included in the "Oaths of justices and judges." *See* 28 U.S.C. § 453.

motivating the state action which caused the complained-of injury'"[21]   The Court further quotes

from *Johnson*, "as long as they do not burden a fundamental right or target a suspect class, 'state

agencies may pursue legitimate purposes by any means having a conceivable rational relationship

to those purposes.'"[22]   This is what the Plaintiff has done in the case at bar, he has alleged violations

of fundamental rights, therefore the rational relationship test is inapplicable.   Yet the Court ignores

Plaintiff's fundamental rights claims in its analysis.

The *Johnson* case was based on a prisoner claiming a violation of his equal protection

rights because the parole board's system was "arbitrary and capricious and treats prisoners who

are the target of protest letters differently from prisoners who do not receive protest letters." *Id.* at

304-305.   The Court noted,

> The existence of a discoverable group or classification antedating the challenged
> state action is a *sine qua non* for proving purposeful discrimination; it cannot
> tenably be maintained that the state selected a particular course of action to harm
> an "identifiable group" when that body did not exist until *after* the state acted.

*Id.* (emphasis in original).   The *Johnson* court found no discrimination among prisoners who

received protest letters and those who did not because "they apply to *all* prisoners *equally* and

impact the prison population in [an unpredictable manner]." *Id.* at 307.   There was no protected

or suspect class.   The court also found because "prisoners have no protected liberty interest in

parole they cannot mount a challenge against any state parole review procedure on procedural (or

substantive) Due Process grounds." *Id.* at 308.

This is distinguishable from the case at bar.   As a result of the City's Policy, it created two

distinct groups of drivers in the City of Hattiesburg, those who are driving through school zones,

---

[21] *See*, Memorandum Opinion and Order, page 18, quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).

[22] *Id.*

and those who are not.  There is no requirement that the classification include or involve one of

the "protected" or "suspect" classes for there to be distinct groups, as demonstrated in *Johnson*.[23]

Further, the Court recognized Plaintiff's allegations in his Complaint that states those who receive

citations pursuant to the Policy, ***which includes how it is enforced***, are treated differently than

others who receive citations for speeding outside school zones.[24]  Yet the Court believes Plaintiff

employs circular logic claiming only his fundamental right to equal protection has been violated,

going so far as to state "[n]o one has a fundamental right to speed in a school zone."[25]  That

statement is preposterous and insulting, no one is suggesting anyone has a fundamental right to

speed through a school zone.  But everyone has a fundamental right to due process, including the

right to a hearing, to defend oneself, and the presumption of innocence.

To be clear, no circular logic is required.  While it is true that "[w]here a particular

Amendment provides an explicit textual source of constitutional protection against a particular sort

of government behavior, that Amendment, not the more generalized notion of substantive due

process, must be the guide for analyzing these claims[,]" the Equal Protection claim here only gets

---

[23] *And see Doe*, 615 F. Supp. 3d at 492 (In a § 1983 claim regarding a state actor under color of law, who acted for nothing more than his own sexual gratification, the court noted the plaintiff could bring an equal protection claim as a "class of one" when alleging she was intentionally treated differently from others similarly situated for no rational basis for the difference.)

[24] Enforcement of this Policy, as well as Plaintiff's Equal Protection Claim, includes and encompasses all of the means and allegations discussed in Plaintiff's other claims regarding constitutional violations, i.e. – the deprivation of the right to a hearing and to defend himself, and being deemed guilty instead of presumed innocent until proven guilty.  These are fundamental rights protected by the Constitution and are ignored by the Court in its analysis of Plaintiff's Equal Protection Claim.  Indeed, in quoting Plaintiff's Complaint, the Court began in paragraph three of his claim and failed to consider the first two paragraphs which adopt and incorporate all preceding paragraphs and averments, seeking damages "and injunctive relief to prevent or enjoin the Defendants from continuing to carry out the unlawful, unconstitutional and conspiratorial scheme."  *See* Complaint [1], page 25, paragraphs 90 – 91.

[25] *See*, Memorandum Opinion and Order, page 20, footnote 21.

us so far.[26]  For instance, let us assume the City of Hattiesburg employed the Policy city wide, instead of only in school zones.  The end result may negate the Plaintiff's Equal Protection claim, as he would be treated the same as everyone else, but the fundamental rights of Due Process and the presumption of innocence, would remain at issue.  This is at issue in the Policy as promulgated, enacted, and enforced by the Defendants.

The Court later implies that while Plaintiff correctly and properly quotes *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) for the proposition "[t]he equal protection clause 'direct[s] that all persons similarly situated should be treated alike'", he fails to understand how equal protection works, and it is not this simplistic.[27]  It is true that an Equal Protection analysis is not simplistic, but the *Cleburne* Court makes it clear that "when state laws impinge on personal rights protected by the Constitution[,]" strict scrutiny will apply and the law "will be sustained only if [it is] suitably tailored to serve a compelling state interest."  *Cleburne*, 473 U.S. at 440.  In *Qutb*, the Fifth Circuit stated:

> Under the Equal Protection analysis, we apply different standards of review depending upon the ***right*** or classification involved.   If a classification disadvantages a "suspect class" ***or impinges upon a "fundamental right,"*** the ordinance is subject to ***strict scrutiny***.  Under the strict scrutiny standard, we accord the classification ***no presumption of constitutionality***.  Instead, we ask whether the classification promotes a ***compelling governmental interest*** and, if so, whether the ordinance is ***narrowly tailored such that there are no less restrictive means available to effectuate the desired end***.

*Qutb v. Strass*, 11 F.3d 488, 492 (5th Cir. 1993) (emphasis added, internal cites and quotations omitted).

---

[26] Regarding Plaintiff's assertion of an Equal Protection claim.  *See Cnty. of Sacrameto v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); and *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008).

[27] *See*, Memorandum Opinion and Order, page 20, footnote 20.

Despite this clear direction, the Court took the position that "discrimination against a protected class, such as those based on race or sexual orientation, is not implicated," and therefore, "the difference in treatment must only be supported by a rational basis."[28]  As explained above, this is not true.  Further, as the Court took notice of Exhibit "E" to Plaintiff's Complaint, City Prosecutor Adamson's letter dismissing the citation against Regnal Blackledge, it took notice that very little is necessary to avoid the consequences of speeding and the attendant fines.[29],[30]  Indeed, anyone could simply make the statement "it was not me."  In fact, the undersigned believes this is a common defense by many, if not most, criminal defendants.  Additionally, those who are speeding through the school zones, but do not own the vehicle they are driving, are not punished for their criminal acts, and have no reason to stop speeding.

Lastly, the Court takes issue with Plaintiff's argument in response to IntelliSafe's motion, that any officer who issues a speeding citation must ***know*** **who** committed the crime, such that it believes that the failure to identify the offender before charging the owner of the vehicle with a crime "fails to implicate a protected class or infringe a fundamental right."[31]  Yet this particular problem raises issues regarding probable cause, relating to another constitutional right.  In *Martin*, the Mississippi Supreme Court reiterated how probable cause is defined:

> A practical, nontechnical concept, based upon the conventional consideration of every day life on which reasonable prudent men, not legal technicians act.  It arises

---

[28] *See*, Memorandum Opinion and Order, page 20.

[29] *See*, Memorandum Opinion and Order, page 18, footnote 18.

[30] Additionally, while not in the Complaint, but was provided to the Court in response to the Defendants' motions, on October 2, 2024, at the first hearing regarding these citations, 34 of the 35 citations were dismissed, just like Blackledge's citation, because the City was not capable of proving who was driving the offending vehicle.  Likewise, since that hearing, upon information and belief, dozens, or even hundreds, of other citations have been dismissed summarily by the Municipal Court without question or even plea by the defendant charged, simply because the City cannot identify who was driving.  This serves nothing to deter speeding.

[31] *See*, Memorandum Opinion and Order, page 22.

when the facts and circumstances with an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed ***and that a particular individual committed it.***

*Martin v. State*, 240 So. 3d 1047, 1051 (Miss. 2017) (emphasis added, internal cites and quotations omitted).  *See also*, *Reitz*:

> The Supreme Court has defined probable cause as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that ***the suspect*** has committed, is committing, or is about to commit an offense."

*Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023) (quoting, *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).  Pursuant to these definitions and concepts of probable cause, a police officer must know who committed a criminal offense before having probable cause to charge that person with a criminal act.

For these reasons, the Policy is ***not*** narrowly tailored such that if effectuates the desired end, and there are less restrictive means available to accomplish the City's goal, without trampling on another's constitutional rights.[32]

**D.    Plaintiff's other constitutional violation claims.**

Because this Court erroneously disposed of Plaintiff's constitutional claims, it also erroneously disposed of other claims dependent upon those based on fundamental rights. However, as discussed above, Plaintiff's constitutional claims are valid and the disposition of those claims should be reversed and litigated further.  For this reason, the Court's disposition of Plaintiff's claims regarding his Sixth Amendment rights in Count III, for declaratory judgment and

---

[32] In his response to the City's motion, the Plaintiff has suggested it would be more effective to have a patrol car in plain sight with its blue lights flashing, as everyone would see the vehicle and slow down.  Also, this would not violate anyone's constitutional rights.

injunctive relief in Count VI, and for municipal liability in Count VII, should also be reversed and litigated.

E.    **Claims against the City Defendants.**

With regard to Plaintiff's claims against the City Defendants – the City of Hattiesburg, Chief Hardy Sims, and the City Prosecutors – the Court distorts Plaintiff's claims to mean something entirely different.  The Court apparently views the Plaintiff's arguments and allegations regarding the City Defendants as one of: although the City Defendants, more particularly the City Prosecutors, have coercive power to violate a citizens' constitutional rights, there are no allegations the City Defendants acted in such a way to exercise that power to affirmatively violate the Plaintiff's rights; and if anything, the actions of City Prosecutor Adamson were the opposite of coercion as evidenced by the letter to Blackledge dismissing his citation. [33]

Yet, that is not Plaintiff's allegations against the City Defendants.  The Court recognized the City Defendants, although the Court emphasized only the City Prosecutors, have coercive power to enforce and exercise "compulsion or constraint."[34] (citing *Campaign v. Miss. Dep't of Human Servs.*, 175 F. Supp. 3d 691, 704 (S.D. Miss. 2016)).  But what if failed to take into consideration is the other side of that coin – the City Defendants have the "'coercive power' necessary to either cause the injury *or redress it*."  *Id.* at 700-708 (emphasis added).  In *Lefebure*, the Fifth Circuit recognized that "a dividing line exists between failure-to-protect and failure-to-prosecute claims – that is, claims alleging a failure to protect *before* harm occurs (ex-ante) and a failure to prosecute *after* the fact (ex-post).  A plaintiff has standing to pursue the former, but not

---

[33] *See generally*, Memorandum Opinion and Order, page 23-25.

[34] *Id.*

the latter.  *Lefebure v. D'Aquilla*, 15 F.4th 650, 661 (5th Cir. 2021) (emphasis in original, internal

citations omitted).  Indeed, Judge James E. Graves Jr., in his dissent in *Lefebure*, stated:

> [O]ur circuit has recognized that equal protection suits based on discriminatory
> underenforcement of the law, known as failure-to-protect claims, can be brought
> against law enforcement officials.
>
> * * *
>
> Unlike in failure-to-prosecute cases, where a third-party wrongdoer is the source of
> the direct harm the plaintiff suffered as a crime victim, the allegation in failure-to-
> protect claims is that law enforcement practices played a role in the plaintiff's
> victimization.
>
> * * *
>
> Such failure-to-protect claims may include allegations that law enforcement's
> discriminatory inaction increased the likelihood of crimes or even directly led to
> crimes against a certain group.
>
> * * *
>
> Although failure-to-protect claims are usually brought against the police, the same
> logic applies to prosecutors.  Prosecutors are, after all, part of law enforcement, and
> if anything, they may have more power to implement discriminatory policies than
> the average officer out on patrol.

*Id.* at 664- 667 (internal citations and quotations omitted).

Contrary to the Court's view of the City Prosecutors' "actions," they, along with Chief

Sims, are ***all*** a part of the City's law enforcement mechanism and owe duties to those within the

City's boundaries.  Here, however, the moto "*To Protect and Serve*," has been lost.

The Plaintiff's allegations against the City Defendants, is that each of them had knowledge

of, or played a role in either the promulgation, enactment, and/or enforcement of the Policy at issue

in this matter; ***or*** have acquiesced in the Policy's unconstitutional actions, and violations against

the Plaintiff and others, by not ***redressing*** the problem, and by failing to protect against its

unconstitutional results.

These actions, and/or inactions, do not fall within the City Prosecutors' "conduct [which] is 'intimately associated with the judicial phase of the criminal process[,]'" and therefore are not afforded absolute immunity. *Loupe v. O'Bannon*, 824 F.3d 534, 538-539 (5th Cir. 2016) (internal citations and quotations omitted). Instead, the City Prosecutors are only afforded qualified immunity when their conduct involves "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Id.* But this qualified immunity only protects the City Prosecutors from conduct that "does not violate clearly established or constitutional rights of which a reasonable person would have known. A right is clearly established if it is sufficiently clear that 'every reasonable officer' would have understood that what he or she is doing violates that right." *Turner v. Oliver*, 2023 U.S. Dist. LEXIS 60520, *13-14 (S.D. Miss. March 10, 2023).

For the reasons stated above, the Plaintiff's constitutional violation claims are valid. As such, the claims against the City Defendants are viable, and this Court's Memorandum Opinion and Order dismissing Plaintiff's claims with prejudice should be reversed.

### F.    Supplemental Jurisdiction.

Upon the reversal of this Court's Memorandum Opinion and Order, this Court should properly retain supplemental Jurisdiction of the Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(a), because the claims are so related to claims in this action which are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

### III.    Conclusion.

Chief Justice, Earl Warren, once wrote:

We are oath-bound to defend the Constitution. This obligation requires that [ ] enactments [of law] be judged by the standards of the Constitution. The Judiciary

has the duty of implementing the constitutional safeguards that protect individual rights. When the Government acts to take away [ ] fundamental right[s ], the safeguards of the Constitution should be examined with special diligence.

The provisions of the Constitution are not time-worn adages or hollow shibboleths. They are vital, living principles that authorize and limit governmental powers in our Nation. They are the rules of government. When the constitutionality of [a law] is challenged in this Court, we must apply those rules. If we do not, the words of the Constitution become little more than good advice.

*Trop v. Dulles*, 356 U.S. 86, 103-04, 78 S. Ct. 590, 599 (1958).

For the purposes of this motion, "the court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible." *Jones*, 971 F. Supp. 2d at 638. This is not an onerous burden in a § 1983 claim at this stage of the case. *Doe*, 615 F. Supp. 3d at 491.

For the foregoing reasons, Plaintiff respectfully requests this Court to alter or amend its Memorandum Opinion and Order, reversing its dismissal of Plaintiff's valid claims against the Defendants herein. Should this judgment stand, the repercussions on the fundamental and constitutional rights of thousands are at risk, and would result in manifest error in law and fact.

WHEREFORE, PREMISES CONSIDEREED, the Plaintiff respectfully requests this Court to alter or amend its Memorandum Opinion and Order.

**RESPECTFULLY SUBMITTED** this the 13th day of November, 2025.

GERRY MALLORY, *PLAINTIFF*

BY:  _/s/Richard J. Lajaunie_____
RICHARD J. LAJAUNIE (MSB# 100035)
RONALD V. JOHNSON, IV (MSB# 105950)
DEAKLE-JOHNSON LAW FIRM, PLLC
Post Office Box 2072
Hattiesburg, Mississippi 39403
Phone: (601) 544-0631   Fax: (601) 544-0699
Email:  rvjohnson@djlawms.com
          rjlajaunie@djlawms.com
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which provides notice of same to all counsel of record registered with the CM/ECF system.

This the 13th day of November, 2025.

_/s/Richard J. Lajaunie_____
Richard J. Lajaunie
*Attorney for Plaintiff*